2003 ME 9

**Daniel PRIESTLY**

v.

**TOWN OF HERMON.**

Supreme Judicial Court of Maine.

Submitted On Briefs: Nov. 26, 2002.

Decided: Jan. 22, 2003.

Schuyler G. Steele, Newport, for plaintiff.

Thomas A. Russell, Farrell, Rosenblatt & Russell, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] Daniel Priestly appeals from a judgment of the Superior Court (Penobscot County, *Mead, J.*) affirming the decision of the Town of Hermon's Zoning Board of Appeals (Board) denying Priestly's application for a permit to construct a "broadcast transmission facility" in the Town's "Village Commercial" zone. Contrary to Priestly's contention, the Board did not err when it denied Priestly a construction permit. Accordingly, we affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] Daniel Priestly sought to construct a 199–foot tall "broadcast transmission facility" in the "Village Commercial" zone on land owned by Mitch and Katie Gallant. The Town considered Priestly's proposed structure to be a "communications tower."[1] Communication towers are permitted in three zones within the Town, but not the "Village Commercial Zone." *See* HERMON, ME, LAND USE ORDINANCE §§ 3–5, 3–9 (2000). Priestly sought to characterize the tower as an "essential service,"[2] which is permitted in all zones.[3] Priestly argues that the tower is one component of a radio station and, he contends, a radio station is an essential service.

[¶ 3] Priestly's application for administrative appeal, and its supporting documentation, described his "broadcast transmission facility" as a 199–foot tall (above ground) steel tower for the transmission of signals for a new commercial AM radio station, along with a ground system consisting of 120 wires of 200 feet in length and 120 wires of 50 feet in length. The tower would transmit AM radio signals on channel frequency 1230 kHz at a power of 1 kW during daytime hours and a power of .66 kW during nighttime hours.

[¶ 4] The Town's Code Enforcement Officer (CEO) determined that the proposed facility was a "communications tower" as defined in the Town's Land Use Ordinance. The CEO denied Priestly's application because the lot where Priestly proposed to build his tower was not within one of the three designated zones where the Town's Land Use Ordinance permits com-

---

1. Article 13 defines a "communications tower" as:

   A structure used for transmitting and receiving radio, microwave, or similar electromagnetic signals, not including antennae and satellite dishes designed for ordinary home or farm use. Communications tower shall not mean a utility pole that supports electric or telephone transmission lines, and which is owned by a public utility. HERMON, ME, LAND USE ORDINANCE § 13–4 (2000).

2. Article 13 defines "essential services" as:

   Gas, electrical or communication facilities; steam, fuel, electric power or water transmission or distribution lines, towers and related equipment; telephone cables or lines, poles and related equipment; gas, oil, water, slurry or other similar pipelines; municipal sewage lines, collection or supply systems; and associated storage tanks. Such systems may include towers, poles, wires, mains, drains, pipes, conduits, cables, fire alarms and police call boxes, traffic signals, hydrants and similar accessories, but shall not include service drops or buildings which are necessary for the furnishing of such services. *Structures such as high voltage transmission towers, microwave relay towers, groups of high voltage transformers (so-called "sub-stations", [sic] which are used more in transmission of utility products than in their distribution, shall be considered "structures necessary for essential services" rather than essential service components.*
   *Id.* at § 13–8 (emphasis in original).

3. By permit, "essential services" may be located in all zoning districts, and with site plan review approval from the Planning Board, "essential services structures" may be located in all zoning districts. HERMON, ME, LAND USE ORDINANCE § 3–12.

munications towers. The CEO also decided that a broadcast transmission facility is not an "essential service" as defined by the Land Use Ordinance.

[¶ 5] Priestly appealed the CEO's decision to the Board. After a public hearing, the Board affirmed the CEO's determination and denied Priestly's appeal, concluding that "the proposed structure is more ... of a communications tower than ... an essential service." Pursuant to M.R. Civ. P. 80B, Priestly then appealed the Board's decision to the Superior Court, which affirmed. Priestly then filed this appeal.

## II. DISCUSSION

[¶ 6] When the Superior Court acts in an appellate capacity, we review the agency's decision directly. *See, e.g., Bragdon v. Town of Vassalboro,* 2001 ME 137, ¶ 4, 780 A.2d 299, 301. When a zoning board of appeals acts as the tribunal of original jurisdiction, as both factfinder and decision maker, we review its decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Yates v. Town of Southwest Harbor,* 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171.

[¶ 7] Resolution of this case hinges on the interpretation of the terms "communications tower" and "essential services" in the Town's ordinance. Interpretation of a zoning ordinance is a question of law that we review de novo. *DeSomma v. Town of Casco,* 2000 ME 113, ¶ 8, 755 A.2d 485, 487. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Gerald v. Town of York,* 589 A.2d 1272, 1274 (Me.1991) (citation omitted).

[¶ 8] The definition of "communications tower" is clear and unambiguous,

and the proposed radio signal transmission tower falls within the plain meaning of that definition: a structure that would be used to receive (from the radio station) and transmit radio signals. The ordinance must be construed in light of its objectives. *Banks v. Maine RSA # 1,* 1998 ME 272, ¶ 4, 721 A.2d 655, 657. The Town's ordinance clearly and rationally aims to exclude towers—whether they are radio towers or cellular phone towers—from populated residential and commercial areas. Because the proposed structure is a "communications tower," it may be placed only in designated districts, not including the "Village Commercial" zone, which is a populated area with residences and small businesses.

[¶ 9] As the Town correctly asserts, Priestly's application was not for a "radio station." Rather, it was for a freestanding, 199-foot tower to receive and broadcast radio signals.

[¶ 10] Priestly misconstrues the definition of "essential services" when he contends that his radio tower is an "essential service." Under the Land Use Ordinance, the tower is not an "essential service," first, because it is not a radio station, and second, because even if it were, a radio station is not an "essential service" merely because it is required to participate in the Emergency Broadcast System.

[¶ 11] Priestly also wrongly relies on the Federal Communications Commission rules and definitions in his interpretation of the Town's ordinance. As noted, the primary source of the meaning of any term contained in a zoning ordinance is the ordinance itself.

[¶ 12] Because a "broadcast transmission facility" is not an "essential service," we conclude there was no error of law.

The entry is:

Judgment affirmed.