**2004 ME 95**

**PEREGRINE DEVELOPERS, LLC**

v.

**TOWN OF ORONO et al.**

Supreme Judicial Court of Maine.

Argued: May 12, 2004.

Decided: July 23, 2004.

Edmond J. Bearor (orally), Wendy A. Brown, Rudman & Winchell, L.L.C., Bangor, for plaintiff.

Erik M. Stumpfel (orally), P. Andrew Hamilton, William B. Devoe, Eaton Peabody, Bangor, for Town of Orono.

Daniel A. Pilleggi (orally), Roy, Beardsley, Williams & Grainger, L.L.C., Ellsworth, for intervenors.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, CALKINS,* and LEVY, JJ.

LEVY, J.

[¶ 1] Peregrine Developers, LLC appeals from a judgment entered in the Superior Court (Penobscot County, *Hjelm, J.*) affirming the decisions of the Town of Orono Planning Board and Zoning Board of Appeals (ZBA) that denied Peregrine's

---

* Although not available at oral argument, Justice Calkins participated in this opinion. *See* M.R.App. P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

development applications for site plan review, subdivision approval, and planned unit development approval for proposed housing. Peregrine contends that its applications were improperly denied because both municipal boards erred by classifying the proposed development as a dormitory rather than as a multifamily dwelling. We agree and vacate the judgment.

## I. BACKGROUND

[¶ 2] Peregrine seeks to build a housing complex in Orono. After unsuccessfully attempting to affiliate with the University of Maine in a joint project, Peregrine proposed a development of two three-story residential buildings containing a total of 153 apartment units. Each of the units is to have its own kitchen, living room, bathroom, and bedrooms.

[¶ 3] Peregrine sought approval and site plan review for its project as a "multifamily dwelling planned unit development," which is a permitted use of the property in the Town's Forestry and Agriculture Zoning District (F & A District) in which the property is located. Peregrine sought to distinguish its proposal from being classified as a "dormitory" or a "commercial dormitory" by structuring its application as a multifamily project, with leases for every unit or family that would occupy its dwelling units. Dormitories are not permitted in the F & A District.

[¶ 4] The Orono Land Use Ordinance defines "dwelling, multifamily" as a "residential building designed for or occupied by three or more families, with the number of families in residence not exceeding the number of dwelling units provided." Orono, Me., Land Use Ordinance § 18–31 (July 10, 2000) [hereinafter Ordinance]. The Ordinance defines "family" as "(1) One

or more legally related persons occupying a single dwelling; or (2) A group of unrelated individuals, not to exceed five persons, occupying a single *dwelling unit;* such group to be distinguished from a group occupying a community living facility, dormitory, group home, hotel, rooming house or social, fraternal organization." *Id.* (emphasis added). The Ordinance defines "dwelling unit" as "one room, or rooms connected together, constituting a separate independent housekeeping establishment for owner occupancy, rental or lease, and physically separated from any other rooms or dwelling units which may be in the same structure, and containing independent cooking and sleeping facilities." *Id.*

[¶ 5] Two other Ordinance terms are important: "dormitory," which the Ordinance does not define,[1] and "commercial dormitory," which is defined as "premises consisting of more than three *rooming units* in a building used primarily to house more than three unrelated individuals, with or without individual cooking facilities." *Id.* (emphasis added). "Rooming unit" is defined as "any room or rooms forming a single habitable unit used or intended to be used for living and sleeping but not for cooking or eating purposes." *Id.*

[¶ 6] After several hearings on Peregrine's application, the Planning Board voted to disapprove the project, finding that the proposed use was a "dormitory." Although the Planning Board did not issue findings that explained why the project constituted a dormitory, the comments of the Board members who voted to deny the application reflect a belief that the term

---

1. Even though "dormitory" is not defined, the Ordinance states, "Unless specifically defined in this article, words and phrases used in this Land Use Ordinance shall have their customary dictionary meanings." Orono, Me., Land Use Ordinance § 18–31 (July 10, 2000).

"dormitory" is, in the words of one member, "housing specifically for students."

[¶ 7] Peregrine appealed the Planning Board's decision to the ZBA and simultaneously filed an appeal in the Superior Court pursuant to M.R. Civ. P. 80B. The ZBA conducted a de novo hearing on Peregrine's application and denied the appeal based on its finding that the proposed use was a dormitory. The ZBA did not define "dormitory," but recited the Ordinance provisions that an undefined term shall be given its customary dictionary meaning. Peregrine then appealed to the Superior Court from the ZBA decision, pursuant to M.R. Civ. P. 80B and 30-A M.R.S.A. § 2691(3)(G) (1996), which was combined with the Planning Board appeal. Intervenors Sarah Trask and Lambros Karros were granted party status.

[¶ 8] The Superior Court affirmed the decisions of the Planning Board and the ZBA. It concluded that the definitions of "dormitory" considered by the ZBA "are predicated on a close relationship between the residential facility and a school" and that this large scale "residential development has particularly close ties to an educational institution" mostly because it is geared largely to the student housing market. On this basis, the Superior Court distinguished Peregrine's proposal from other apartment buildings or residences that are located near a school and stated that Peregrine's project "is much more suggestive of common notions of a 'dormitory' than of other housing facilities." Peregrine appeals from the Superior Court's judgment.

## II. DISCUSSION

### A. Standard of Review

[¶ 9] When the Superior Court acts as an intermediate court of appeals, the Law Court reviews the decision of the "'tribunal of original jurisdiction'" directly. *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 6, 828 A.2d 768, 770 (quoting *Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775). "When a zoning board of appeals acts as the tribunal of original jurisdiction as both fact finder and decision maker, we review its decision directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." *Brackett v. Town of Rangeley*, 2003 ME 109, ¶ 15, 831 A.2d 422, 427. "Interpretation of a zoning ordinance is a question of law that we review de novo. The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 7, 814 A.2d 995, 997 (citations and quotation marks omitted). The question of whether a proposed use falls within the terms of a zoning ordinance is a question of law that this Court reviews de novo. *Wells v. Portland Yacht Club*, 2001 ME 20, ¶ 8, 771 A.2d 371, 374.

### B. The Town's Interpretation of the Ordinance

[¶ 10] Peregrine contends that the Planning Board and ZBA erred in their interpretation of the Ordinance with respect to the definition of "dormitory." Peregrine asserts that the Ordinance contemplates a definition of "dormitory" that is distinguishable from a multifamily dwelling, and that the definition of dormitory that the Boards implicitly adopted creates an unreasonably broad definition that would encompass any multifamily building or apartment building in the Town of Orono that rents to students.

[¶ 11] The Town asserts that although neither the Planning Board nor the ZBA articulated a definition of what constitutes

a "dormitory" under the Ordinance, both Boards implicitly concluded that the term "dormitory" included "large-scale residential developments designed and intended primarily for lease to students, and containing a number of common facilities and services for that purpose."[2] The Town asserts that the Boards may logically and reasonably interpret "dormitory" in a manner that reduces the number of proposed projects that would qualify as multifamily dwellings.

[¶ 12] Neither Board explicitly adopted a definition of "dormitory." Nevertheless, the Town and the intervenors emphasize that what makes this proposed development a dormitory is Peregrine's acknowledgement that its project will be used primarily for students. Off-campus student use is not, however, a criterion stated in the Ordinance or in any of the dictionary definitions of "dormitory" that are part of the administrative record and were considered by the Boards.

[¶ 13] Our examination of the meaning of the word "dormitory" as used in Orono's Ordinance begins with the Ordinance's provisions. *See Priestly*, 2003 ME 9, ¶ 7, 814 A.2d at 997 (stating, "[t]he terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole" (quotation marks omitted)). Although there is ambiguity in the relevant Ordinance provisions, the cornerstone of the Ordinance's definition of "multifamily

dwelling"[3] is that it is a residential building containing "dwelling units." Ordinance § 18–31. The Ordinance's definition of "dwelling unit" emphasizes that the unit "contain[s] independent cooking and sleeping facilities." *Id.* It is apparent that Peregrine's application proposes independent cooking and sleeping facilities in each dwelling unit and, therefore, satisfies the Ordinance's criteria for a multifamily dwelling.

[¶ 14] The Ordinance does not define the term "dormitory," but it does define "commercial dormitory." The focal point of the definition of "commercial dormitory" is that the premises contain "rooming units." *Id.* A "commercial dormitory" is a subset of "dormitory," and therefore informs the ordinance's use of the word "dormitory." The Ordinance's definition of "rooming unit" emphasizes that each unit's "room or rooms ... [are] intended to be used for living and sleeping but not for cooking or eating purposes." *Id.* Although the definition of "commercial dormitory" is more expansive than "rooming unit" because a commercial dormitory is a dormitory "with or without individual cooking facilities," the emphasis of the Ordinance's definition of rooming unit is on units for "living and sleeping but not for cooking and eating purposes." This is akin to the statutory definition of "dormitory" in 25 M.R.S.A. § 2463–A(1)(C) (Supp.2003),[4] which emphasizes that a dormitory is a building containing "sleeping accommodations."

---

2. This definition was offered at oral argument and in the Town's brief, but does not appear in the record.

3. We regard references to either "multifamily dwelling" or "dwelling, multifamily" in the Orono Land Use Ordinance as synonymous.

4. For purposes of public safety and fire prevention, the Maine Legislature defined "dormitory" as

a building or space in a building owned by a public educational institution in which:
(1) At least 5 rooms are provided as sleeping accommodations for students of the public educational institution; or
(2) Sleeping accommodations are provided for 15 or more students of the public educational institution.

25 M.R.S.A. § 2463–A(1)(C) (Supp.2003).

[¶ 15] Accordingly, based on the Ordinance's relevant provisions, Peregrine's proposed project is more in the nature of multifamily housing and less in the nature of a commercial dormitory as those terms are employed in the Ordinance. The Town and the intervenors would have us conflate these terms, so as to transform the meaning of multifamily dwelling into a dormitory if enough students live there. Counsel for the Town and the intervenors conceded at oral argument that if students were not allowed to live there, Peregrine's proposed use would not be a dormitory. There is no indication in the Ordinance, however, that a multifamily dwelling and a "dormitory" are structures that are to be distinguished by the predominant type of individuals— whether students, the elderly, the handicapped, or others—residing in the structure. Ordinance § 18-31. Moreover, such an interpretation could produce absurd results because it would render every multifamily dwelling unit in the Town of Orono that is occupied by three or more unrelated students a "dormitory," which is a prohibited use outside of the University District. We reject such an interpretation. *See Melanson v. Belyea,* 1997 ME 150, ¶ 4, 698 A.2d 492, 493 (interpreting statutory language to avoid "absurd, inconsistent, unreasonable or illogical results").

[¶ 16] Our interpretation of the Ordinance's provisions is consistent with the four definitions of "dormitory" in the record that were supplied to the Boards. Each of the four definitions include two alternative definitions: (1) a room, or rooms, or a large room with many beds, for sleeping; and (2) a building housing a number of persons at a school or college. Two of the dictionary entries provided include a third alternative definition: a residential community whose inhabitants commute to nearby employment or recreation. None of the definitions in the record combine these separate definitions. In other words, there is no single, customary dictionary definition of "dormitory."

[¶ 17] Applying Peregrine's proposed use to the first definition—*a room, or rooms, or a large room with many beds, for sleeping*—it would appear distinguishable from a dormitory based on the fact that each of the dwelling units will be an independent housekeeping unit, with kitchen and bath facilities. The proposed units are not limited to "sleeping rooms." However, this definition is the most consistent with the nature of the proposed use and the identity of most of the intended occupants.

[¶ 18] Applying the proposed use to the second definition—*a building housing a number of persons at a school or college*— Peregrine's project is distinguishable from a dormitory because, as off-campus housing, it is not *at* a school or college. The third definition does not apply because the act of leaving the housing area by way of "commuting" and going to "nearby employment or recreation" are not required of the inhabitants.

[¶ 19] In summary, because the Ordinance lacks a more restrictive definition of the term "dormitory" than the dictionary definitions that were provided, and because each of the dwelling units would contain independent cooking and sleeping facilities, Peregrine's application satisfies the Ordinance's criteria for a multifamily dwelling. Contrary to the Town's position, there is no indication in the Ordinance that a "dormitory" is a structure defined by the types of individuals who would reside in the structure. The Town of Orono may not deny applications for development by using a more restrictive standard for regulation than is contained in its Ordinance.

[¶ 20] We are unpersuaded by and decline to address the remaining arguments advanced by the Town and the intervenors.

The entry is:

Judgment vacated and remanded to Superior Court for remand to the Orono Planning Board and ZBA for further proceedings consistent with this opinion.