STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-04-07
G.R.B-YOR - 11/5/2004

DORIS WILSON and
WALTER WILSON,

       Plaintiffs

v.                                                                    **ORDER**

INH. CITY OF SACO and
CODE ENFORCEMENT OFFICER,

       Defendants

NOV 9 2004

       This case comes before the court on Doris L. and Walter L. Wilson's appeal from the decisions of the Saco City Council and Saco Code Enforcement Officer, Richard Lambert, pursuant to Rule 80B of Maine Rules of Civil Procedure. Following hearing, the appeal is Denied.

## BACKGROUND

       In November 2003, Doris L. Wilson and Walter L. Wilson (the Wilsons) applied to Saco Code Enforcement Officer Richard Lambert (CEO Lambert) for a building permit to construct a single-family home on their property at 116 Heath Road in Saco, Maine. (R.1) The Wilsons asked to be excused from paying the "Recreational Facilities and Open Space Impact Fee" (Impact Fee) required by Saco Zoning Ordinance Article 16, §§1601-1602. (R.2) CEO Lambert considered whether the Wilsons' project fell within one of seven exceptions to the Impact Fee requirement provided in Article 16, §1602-3 of the Saco Zoning Ordinance. In a letter dated November 14, 2003, CEO Lambert advised the Wilsons that they did not qualify for a §1602-3 exception, and that they could not

have a building permit without paying the Impact Fee, or getting it waived. (R.4) Lambert told the Wilsons they could appeal his decision to the Zoning Board of Appeals (ZBA). (R.4)

The Wilsons did not appeal to the ZBA after they and CEO Lambert concluded the ZBA only heard appeals of building permit denials, but did not hear appeals of requests for waivers of the fee. (R.5) Instead, the Wilsons sought to have the impact fee reduced or eliminated under a different section of the Saco ordinance, §1601-7 (1), which permits the Saco City Council to hear such requests when "the developer or property owner who would otherwise be responsible for the payment of the impact fee voluntarily agrees to construct the improvement for which the impact fee would be collected or an equivalent improvement approved by the City Council". (R. 55) The City Council "may by formal vote following a public hearing, reduce or eliminate the payment of a required impact fee." (R. 55).[1]

On November 21, 2003 the Wilsons paid a $1,699.20 impact fee under protest and received their building permit. (R. 9-13). CEO Lambert wrote the Saco City Administrator, stating why he found the Wilsons did not qualify for a waiver under any of the seven exceptions in Zoning Ordinance §1602-3 and referenced Subdivision Regulations. (R. 7-8) CEO Lambert expressly stated he had no authority to rule or make findings on whether the Wilsons' project met the criteria for a waiver by the City Council under §1601-7. (R. 7)

On November 24, 2003, the City Council held a "workshop" meeting to discuss the Wilsons' request. (R. 15). The meeting was reopened on December 8, 2003. (R. 15)

---

[1]  The City Council may, by formal vote following a public hearing, reduce or eliminate the payment of a required impact fee if it finds that:

> (1) The developer or property owner who would otherwise be responsible for the payment of the impact fee voluntarily agrees to construct the improvement for which the impact fee would be collected or an equivalent improvement approved by the City Council;

(R. 18-19, 55).

2

On January 5, 2004, the City Council held a public hearing on the matter. (R. 14) The Wilsons did an extensive presentation of their plans for the property, including plans for private open space and private recreation facilities. (R. 16-18) At the public hearing, the Wilsons first briefly presented their request under §1601-7(1). (R. 18) The Wilsons went on to argue at length that their plan met the criteria for an exception under §1602-3 (3),(4), and the relevant Subdivision Regulations and should have been granted an exception by CEO Lambert. (R. 19-26). Section 1602-3 states that impact fees shall be assessed except in seven cases including:

3. The recreational facilities portion of the impact fee shall not be paid if the unit is located in a residential subdivision or other residential development that has provided recreational facilities in accordance with the requirements of the City's Subdivision Regulations.[2]

4. The open space portion of the impact fee shall not be paid if the unit is located in a residential subdivision or other residential development that has provided open space in accordance with the requirements of the City's Subdivision Regulations.

(R. 57)

The Wilsons maintained their plan provided open space in excess of, and recreation facilities in accordance with the requirements of the referenced Subdivision Regulations. (R. 20, 62-63). The Wilsons stated they planned to attach a covenant to their deed to preserve the property's open space. (R. 17)

CEO Lambert cited an additional provision in Subdivision Regulations specifying that any developer of less than 20 housing units must pay the recreational portion of the impact fee (R. 29).[3] Some City Council members spoke against the Wilsons interpretation of the §1602-3 and Subdivision Regulations. (R. 27-28) The Wilsons were

---

[2] City of Saco, Subdivision Regulations, Article 10, §§10.1, 10.2 Retention of Open Spaces, Preservation of Natural or Historic Features and Provision of Recreational Areas and Facilities.

[3] "Subdivisions with fewer than twenty (20) dwelling units shall pay the recreational facilities portion of the Recreational Facilities and Open Space Impact Fee established in Article 16 of the Zoning Ordinance." (R. 63)

permitted to respond. (R. 32) After closing the public portion of the meeting, the City Council considered a Finding of Facts, with Conclusions, submitted by the City Administrator, recommending that the City Council deny the Wilsons' request. (R. 48-49) The City Council voted 5-0 to deny the Wilsons' appeal. (R. 46).

On February 3, 2004, the Wilsons filed a Rule 80B appeal of CEO Lambert's decision and the City Council's denial, alleging those decisions rested on erroneous facts and legal standards, were decided in advance of the public hearing, violated State law, violated the Wilsons' due process and equal protection rights, and constituted an illegal tax and an illegal taking by the government.

## DISCUSSION

The Superior Court, in its intermediate appellate capacity, reviews decisions of a municipality for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 6, 814 A.2d 995, 997 (citations omitted). "Substantial evidence is 'evidence that a reasonable mind would accept as sufficient to support a conclusion.'" *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175 (citation omitted). The court may not, however, substitute its own judgment for that of the municipality. Id.

This case brings together in one hearing, two separate provisions of Saco's Impact Fee ordinance. One provision, §1602-3, authorizes the CEO, when issuing a building permit, to excuse payment of the Impact Fee in seven situations, including two that require applying the standards for open space and recreational facilities in the City Subdivision Regulations. (R. 57-58) A different provision, §1601-7, authorizes the City Council at its discretion, to reduce or eliminate a required Impact Fee, under any of four criteria. (R. 55-56) Thus, the CEO decides, under §1602-3, who is required to pay the

4

impact fee, while the City Council may, at its discretion decide, under §1601-7, to reduce a required fee, or eliminate it altogether.

The City Council expressly stated it was operating under the authority granted it in §1601-7, including the procedural requirements for a public hearing followed by a formal vote. (R. 14) The Wilsons also acknowledged their presence before the City Council was authorized under §1601-7. (R.18) Nonetheless, the hearing was largely devoted to a reconsideration of CEO Lambert's decision that the Wilsons did not meet any of the criteria for an exception from the fee under §1602-3 and referenced Subdivision Regulations. (R. 19-26,29-30). The Council's "Findings" reflect CEO Lambert's analysis of the Wilsons case under §1602-3, and its "Conclusions" are devoted in their entirety to interpreting the exception provisions of §1602-3 and referenced Subdivision Regulations. (R. 39-42) The City Council acknowledged that §1607-1 "gives permission to the City Council under certain conditions to reduce or eliminate the payment of a required impact fee under certain conditions by formal vote following a public hearing" (R. 48) but reached no conclusions about whether the Wilsons' project satisfied §1601-7's statutory criteria.

That the Council was on uncertain ground was reflected in comments of City Council members.[4] The Wilsons' confusion about the proper forum for their appeal is understandable – the Impact Fee ordinance does not specify and CEO Lambert was uncertain where the CEO's decision under §1602-3 may be appealed if the fee is paid

---

[4] The transcript of the hearing stated the topic before the City Council was a request for elimination of the impact fee under §1601-7. However, the mayor introduced the hearing as "the public hearing of appeals of Recreational and Open Space Impact Fee" (R. 14) The City Administrator cautioned "This is really an unusual item for the Council to consider. Usually the Council isn't in the permitting process." (R. 35) When the City Administrator insisted the City Council create a record of the basis of its decision, including findings and the Mayor twice acknowledged the need for findings by analogy to hearings by the Planning Board and Zoning Board Appeals. (R. 35-36, 38).

under protest and the building permit is issued rather than denied. (R. 54-61). The City Councils confusion as to the statutory basis for its decision is also problematic.[5]

### 1. Was the CEO and City Council's Denial of an Exception under §1602-3 and Referenced Subdivision Regulations an Error of Law?

The Wilsons contend that City Subdivision Regulations were erroneously applied when CEO Lambert, and later, the City Council, evaluated their project under §1602-3. The Wilsons begin by maintaining their project is an "other residential development" under §1602-3's exception for units in a "residential subdivision or *other residential development* that has provided the open space and recreational facilities in accordance with the requirements of the City's Subdivision Regulations." (emphasis added).

### A. The Open Space Subdivision Regulation

The Wilsons claim it was an error of law to find their plan did not meet §10.2.5 of referenced Subdivision Regulations requirements for open space. The section states, in part, "If common open space is not dedicated to public use, it shall be protected by legal arrangements, satisfactory to the Planning Board, sufficient to assure its maintenance and preservation for whatever purpose it is intended." Such a standard, the Wilsons argue, clearly contemplates private ownership of open space, and is satisfied by the deed covenant the Wilsons plan to attach to their property to protect the open space.

---

[5] The issue of the City Council and this Court's jurisdiction in this matter is not insignificant. Not only is the City Council "not in the permitting process," it is not properly in the process of reviewing the decisions of the Code Enforcement Officer. "Any municipality which adopts a zoning ordinance shall establish a board of appeals subject to this section. (1) Jurisdiction; procedure. The board of appeals shall hear appeals from any action or failure to act of the official or board responsible for enforcing the zoning ordinance, unless only a direct appeal to the Superior Court has been provided by municipal ordinance." 30-A M.R.S.A. §4353 (2003)(emphasis added). A direct appeal to this Court would be allowed only if Saco's municipal ordinance so provides. *Thomas v. City of South Portland*, 2001 ME 50 ¶2, 768 A.2d 595, 595 ("direct appeals to the Superior Court on issues of zoning are allowed only if the municipal ordinance so provides") (citing 30-A M.R.S.A. §4353(1)). Even when a municipal ordinance is silent on appeal procedures in given situations, it cannot "be inferred that, because the board of appeals was not given authority ...the ordinance intended the appeal by directly to the Superior Court." *Hodson v. Town of Hermon*, 2000 ME 181, ¶5, 760 A.2d 221, 222.

The City Council and CEO Lambert argue the Wilsons' plan does not meet the broad requirements of Subdivision Regulation 10.2.5 for safeguarding open space not dedicated to public use from future development, or alternatively, making such space available to the public. The subdivision regulation states:

> ...{T}he developer may dedicate the open space and/or recreational facilities to the city for the use of all citizens, or to another government agency or recognized land stewardship organization willing and able to manage the land permanently. *If common open space is not dedicated to public use, it shall be protected by legal arrangements satisfactory to the Planning Board, sufficient to assure its maintenance and preservation for whatever purpose it is intended.* Covenants or other legal arrangements submitted with the final plan shall specify ownership of the open space, method of maintenance, taxes and insurance; compulsory membership and compulsory assessment provisions; guarantees that any association formed to own and maintain open space will not be dissolved without the consent of the Planning Board, and any other specifications deemed necessary by the Planning Board.

(R. 62)(emphasis added)

Although the Wilsons assured the City Council that a covenant would be attached to their property in the future to protect open space, nothing in the record shows such a covenant existed at the time of the hearing for the City Council's consideration, the terms of that covenant, or that any legal arrangements had been submitted to, or approved by, the Saco Planning Board. It would therefore be possible for the City Council to find, on the evidence before it, that the Wilsons' had not sufficiently met the requirements of the referenced open space Subdivision Regulations. Therefore the City Council's decision not to except this portion of the fee was not an error of law.

B.     The Recreational Facilities Subdivision Regulation

The City Council and CEO Lambert ground their denial of this portion of the Impact Fee in Subdivision Regulation §10.2.3, which stipulates:

7

> All subdivisions shall provide for recreational needs of occupants of the development. Subdivisions with fewer than 20 dwelling units shall pay the recreational facilities portion [of the Impact Fee] Subdivisions of twenty (20) or more dwelling units shall pay the Impact Fee or dedicate at least 50 percent of required open space as usable open space for active recreation.

The Wilsons argue CEO Lambert and the City Council applied this section to them in error because their single-family home is not a "subdivision" but instead, is an "other residential development."

"The interpretation of a zoning ordinance is a question of law that [the Court will] review de novo." *Isis Development, LLC v. Town of Wells*, 2003 ME 149, ¶3, 836 A.2d 1285, 1287 (citations and quotations omitted). "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Priestly v. Town of Harmon*, 2003 ME 9, ¶7, 814 A.2d 995, 997 (citations omitted).

Saco's Zoning Ordinance 16, Impact Fees, states the fees apply broadly to "any construction or development that involves the creation of a new dwelling unit ... including single family homes, apartment units, manufactured housing units, and mobile homes." (R. 57) The purpose of the Ordinance is to ensure that new development bares a proportional or reasonably related share of the cost of a growing infrastructure, either by paying the fees, or improvements. (R. 54)

To begin with, it is difficult to see how the Wilsons' single family home is a "unit [] located in a subdivision or other residential development" subject to City Subdivision Regulations. The Wilsons' broad reading of "a unit located in a ...other residential development" would make any single family home, mobile home, modular home or apartment a candidate for an exception to the Impact Fee governed by reference to Subdivision Regulations.

8

It is even more difficult to see how the Wilsons can maintain that unless Subdivision Regulations expressly refer to "other residential developments" they do not apply to the Wilsons' property.[6] None of the Subdivision Regulations specifically refers to "other residential developments." Some refer to "subdivisions" and some make no reference at all. The Wilsons interpretation is unreasonable because it would mean that, after directly referring "other residential developments" to the standards contained in Subdivision Regulations, no Subdivision Regulations actually apply to those "other residential developments." The Wilsons cannot have it both ways. Either the City Subdivision Regulations govern the standards for open space and recreational facilities for their proposed construction as an "other residential development" or they do not. Because the regulations require that the recreational fee must be paid when subdivisions consist of less than twenty units and because it is unreasonable to interpret the provisions not to apply by direct reference to "other residential developments" as well, the City Council's finding that the Wilsons must pay this portion of the fee is not an error of law.

2. **Was the City Council's Denial of the Wilson's Request Under §1601-7 an Error of Law?**

Although the parties acknowledged their presence at the hearing was under the City Council's §1601-7 authority and procedural requirements, their testimony, discussions, findings and conclusions are almost exclusively reserved to CEO Lambert's decision under §1602-3 and referenced Subdivision Regulations, that the Wilsons were required to pay the fee.

---

[6] The Wilsons make a second argument that the standards of Subdivision Regulations should not be applied to them at all in a review under §1601-7, which makes no reference to Subdivision Regulations. This argument is addressed *infra*.

Section 1601-7 allows the City Council at its discretion to reduce or eliminate the impact fee in four situations, including the one argued by the Wilsons, when "The developer or property owner who would otherwise be responsible for the payment of the impact fee voluntarily agrees to construct the improvement for which the impact fee would be collected *or an equivalent improvement approved by the City Council...*" (R. 55) (emphasis added). The Wilsons correctly argue that reference to Subdivision Regulations is irrelevant when considering whether their plan provided an improvement "equivalent" to that for which the impact fee would be collected. Section 1601-7, in fact, begins from the presumption that the impact fee is required, and §1602-3 and referenced Subdivision Regulations no longer apply.

Although a great deal of time was spent discussing §1602-3 and Subdivision Regulations inapplicable under §1601-7, the record shows sufficient evidence that the City Council found the Wilsons' plan was not "an equivalent improvement" and that they found his plan to exclude the public not in keeping with the overall intent of the Impact Fee ordinance to create and preserve open space and recreational opportunities for the community. (R. 27-28, 29-30, 42, 49-50). The City Council had very broad statutory discretion under §1601-7 to approve or deny a reduction or elimination of the Wilsons' fee. The ordinance provides the City Council <u>may</u> (or may not) reduce or eliminate the fee <u>if</u> it finds an equivalent improvement and <u>if</u> it approves the equivalent improvement. (R. 55) Although the City Council used little of the statutory language of §1601-7 in its discussions, it clearly did not approve of the Wilsons' arrangements for private use and private ownership of open space and recreational facilities, even if such private use and ownership was arguably contemplated in the ordinances, and was arguably equivalent to "the improvement for which the impact fee would be collected." Because the City Council's decision was discretionary, even in the face of arguably"

10

equivalent improvements," its decision not to reduce or eliminate the Wilsons' required Impact Fee under §1601-7 was not erroneous as a matter of law.

## 3. Does Saco's Impact Fee Ordinance Violate 30-A M.R.S.A. §4354?

The Wilsons contend the Saco City Impact Fee ordinance as enacted and applied to them violates the provisions of 30-A M.R.S.A. §4354(2) requiring municipal impact fees to be:

A. Reasonably related to the development's share of the cost of infrastructure improvements made necessary by the development, or, if the improvements were constructed at municipal expense prior to the development, the fee must be reasonably related to the portion or percentage of the infrastructure used by the development.

B. Funds received from impact fees must be segregated from the municipality's general revenues. The municipality shall expend the funds solely for the purposes for which they were collected.

C. The ordinance must establish a reasonable schedule under which the municipality is required to use the funds in a manner consistent with the capital improvement component of the comprehensive plan.

D. The ordinance must establish a mechanism by which the municipality shall refund impact fees or that portion of impact fees, actually paid that exceed the municipality's actual costs or that were not expended according to the schedule under this subsection.

Although the Wilsons did not dispute the amount or use of the Impact Fee at any point in the hearings, the issue was briefly discussed by the City Council in explaining the overall workings and intent of the ordinance. (R. 43, 44-45)

The Saco Impact Fee ordinance assessing a standard $1200 recreational facilities impact fee and $499.20 open space impact fee on any new single-family residences is reasonable. In §1602-4, the ordinance describes how the fee is reasonably related to use by its calculation according to the number of people expected to occupy a particular structure. (R. 58) Nothing in the record suggests the Wilsons objected to the methods

11

used to calculate the modest $1699.20 fee levied on their single family dwelling, and this argument is therefore not available to them in their 80B appeal.

The Saco ordinance meets the requirements that impact fees to be kept in segregated accounts and expended "for the purposes for which they were collected." 30-A M.R.S.A. 4354(2)(B) Section 1601-5 of the ordinance requires the fees "shall be used only to pay for the capital cost of the infrastructure improvements specifically associated with the fee..." and lists several costs to which the fees may and may not be applied. (R. 54-55) Section 1601-4 describes the segregated accounts, which were further explained at the City Council hearing. (R. 44, 54) The Saco ordinance likewise provides for a mechanism for refunding impact fees. (R. 55) Likewise, because the Impact Fee was enacted pursuant to the statutory authority granted by 30-A M.R.S.A. §4354, to collect dedicated funds from developers of property, the fee does not constitute, as the Wilsons allege, impermissible or general taxation.

**4. Does the Impact Fee Violate the Equal Protection, Due Process or "Takings" Provisions of the United States Constitution and the Maine Constitution?**

Because the Wilsons have not raised these issues below, nor joined them as Independent Actions under M.R.Civ.P. 80B(i), this Court need not reach these claims.

Therefore, the Wilsons' Rule 80B appeal is Denied.

The clerk may incorporate this order in the docket by reference.

Dated: November 2, 2004

PLAINTIFFS:
PRO SE
Doris Wilson
Walter Wilson
9 Wilson Lane
Saco Me 04072

DEFENDANT:
Timothy Murphy, Esq.
PRESCOTT LEMOINE JAMIESON &
NELSON
PO Box 1190
Saco Me 04072

G. Arthur Brennan
Justice, Superior Court

12