2002 ME 13

**Jeffrey C. SALISBURY**

**v.**

**TOWN OF BAR HARBOR et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 10, 2001.

Decided: Jan. 29, 2002.

---

William B. Devoe (orally), Roger L. Huber, Eaton, Peabody, Bradford & Veague, P.A., Bangor, for plaintiff.

Jennifer A. Davis (orally), Clifford H. Goodall, Dyer Goodall and Federle, LLC, Augusta, for defendants, Hans & Susan Utsch.

Richard D. Violette Jr., Brewer, for defendant, Town of Bar Harbor.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.*

SAUFLEY, C.J.

[¶ 1] Jeffrey Salisbury, trustee of the Jeffrey C. Salisbury Revocable Trust of 1994, appeals from the judgment entered in the Superior Court (Hancock County, *Hjelm, J.*) affirming the decision of the Bar Harbor Board of Appeals vacating orders issued by the Bar Harbor Code Enforcement Officer. The Board's action had the effect of rescinding the issuance of a certificate of occupancy for new construction on the Salisbury property. Salisbury argues that the Board of Appeals lacked jurisdiction to review the CEO's actions and that the Superior Court erred in declining to entertain his equitable es-

---

* Wathen, C.J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

toppel claim. We affirm the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] Jeffrey C. Salisbury, as Trustee of the Revocable Trust of 1994, owns a parcel of land on Indian Point Road in Bar Harbor. Hans P. Utsch and Susan L. Utsch own property adjacent to the Salisbury parcel. On April 3, 1998, Salisbury submitted an application for a building permit to the Town of Bar Harbor. Detailed architectural plans were subsequently submitted on April 23, and a building permit was issued by the CEO on April 24. The size of the new structure was limited because the structure to be demolished was nonconforming, lacking the requisite setback from the water. The building permit indicated that Salisbury had permission to "demolish and reconstruct a one family wood frame residence *on existing footprint* in accordance with FEMA." [1]

[¶ 3] On June 9, 1998, the CEO visited the Salisbury property and gave his approval for the pouring of the foundation footings. In a letter dated July 28, 1998, the Utsches' attorney notified Salisbury that he believed the structure being constructed violated section 15.04.04.01 of the Bar Harbor Land Use Ordinance because it exceeded the allowable limits on expansion. Within several weeks the CEO informed Salisbury in writing that the new dwelling violated the 30% restriction on increases in floor area or volume and that a stop work order would be issued on August 14. In fact, the CEO did not issue a stop work order at that time, instead permitting Salisbury to close the building

and protect it from the weather. A stop work order was ultimately issued by the CEO on October 9, 1998, but was subsequently revoked by the CEO a month later.

[¶ 4] The Utsches appealed the revocation of the stop work order to the Bar Harbor Board of Appeals. When the Board concluded that it lacked jurisdiction to hear the appeal, the Utsches appealed to the Superior Court (*Mead, C.J.*), which held that the Board did in fact have jurisdiction to hear the appeal and remanded the matter to the Board for a hearing.

[¶ 5] While that appeal was pending before the Board, the CEO issued a certificate of occupancy for the new building. The Utsches appealed that decision to the Board of Appeals as well. The Board held a consolidated hearing on the revocation of the stop work order and issuance of the certificate of occupancy. Concluding that Salisbury's expansion did not comply with the applicable ordinances or the permit, the Board determined that the stop work order had been wrongfully revoked and that the certificate of occupancy should not have been issued. Specifically, the Board concluded that the square footage of the new building exceeded that of the old building, which the CEO had no authority to approve,[2] and that the volume of the new building exceeded that of the old building by approximately 60%, in violation of section 15.04.04.01.02 of the Bar Harbor Land Use Ordinance.

[¶ 6] Salisbury filed a complaint for review of governmental action with the Superior Court, pursuant to M.R. Civ. P. 80B and 30–A M.R.S.A. §§ 2691(3), 4353(1)

---

1. Salisbury alleges that the CEO later orally advised Salisbury's architect and contractor that the footprint could be expanded by up to 30%, provided that the new building's footprint not encroach further toward the water.

2. Any proposal for expansion should have gone to the planning board. BAR HARBOR LAND USE ORDINANCE § 15.04.04.02. Since it did not, the expansion does not comply with the ordinance.

(1996), asserting that the Board lacked jurisdiction to hear the Utsches' appeals and that under the doctrine of equitable estoppel the Town could not issue a stop work order or deny issuance of the certificate of occupancy. The Utsches were permitted to intervene, and the Town did not participate in the proceeding, notwithstanding the existence of the separate estoppel claim. The Superior Court (*Hjelm, J.*) affirmed the Board's decision, concluding that the Utsches' appeals were timely and that the Board correctly determined that the new construction violated the Bar Harbor Land Use Ordinance. The court ruled against Salisbury on the equitable estoppel claim because Salisbury had not taken the necessary steps to present facts regarding that claim to the Superior Court. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

[¶ 7] Salisbury contends that the Board of Appeals lacked jurisdiction to consider the Utsches' appeals and that the Superior Court erred in refusing to address his equitable estoppel claim.

[¶ 8] The jurisdiction of the Board of Appeals is a question of law that must be ascertained from an interpretation of municipal statutes and local ordinances. We review questions of law de novo. *See Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245, 247; *Bissias v. Koulovatos*, 2000 ME 189, ¶ 6, 761 A.2d 47, 49.

[¶ 9] Review of a judgment on a claim of equitable estoppel ordinarily presents a mixed question of fact and law. We review the court's factual findings to determine whether they were clearly erroneous, and the court's application of principles of equity to those facts for abuse of discretion. *See Fitzgerald v. City of Bangor*, 1999 ME 50, ¶ 10, 726 A.2d 1253, 1255. A claimant alleging that the government has been equitably estopped from applying a zoning ordinance faces a significant hurdle. "Forceful policy reasons militate against restricting the enforcement of municipal zoning ordinances. Zoning ordinances are written to promote the public health, safety, welfare, convenience, morals, or prosperity of the community." *City of Auburn v. Desgrosseilliers*, 578 A.2d 712, 715 (Me. 1990). Here, however, the court was not called upon to exercise its discretion because it concluded that Salisbury failed to bring any facts before the court upon which a decision could be made. We will review that conclusion for clear error.

### B. Jurisdiction

[¶ 10] We first address the appeal of the issuance of a certificate of occupancy. Salisbury argues that neither the Board nor the Superior Court had jurisdiction to undertake an appellate review of the CEO's decision to issue the certificate of occupancy. Salisbury relies on our decision in *Herrle v. Town of Waterboro*, 2001 ME 1, ¶¶ 10–11, 763 A.2d 1159, 1161–62, where we held that courts lack jurisdiction to engage in appellate review of the exercise of prosecutorial discretion by municipalities. Because we couched the language in terms of decisions to *enforce* an ordinance, Salisbury attempts to bring the issuance of the certificate of occupancy within *Herrle's* limitations by arguing that its issuance constituted a decision not to enforce the ordinance.

[¶ 11] *Herrle* does not, however, support Salisbury's argument. *Herrle* precludes the court's intrusion into municipal decision-making when a municipality decides whether *or not* to undertake an enforcement action. If the municipality undertakes a subsequent enforcement action, that action may be subject to judicial

scrutiny if review is authorized by an appropriate law and ordinance.

[¶ 12] The Bar Harbor Land Use Ordinance broadly authorizes appeals of the CEO's decisions to the Board of Appeals. "The Board of Appeals may, upon written application of an aggrieved party received by the Planning Department within thirty (30) days of a decision of the Planning Board or Code Enforcement Officer, hear appeals from such decision." BAR HARBOR LAND USE ORDINANCE § 15.11.02.02.

[¶ 13] The question, then, is whether the issuance of the certificate of occupancy was a "decision" of the CEO. In *Charlton v. Town of Oxford*, 2001 ME 104, n. 8, 774 A.2d 366, 373, we suggested that the issuance of a certificate of occupancy was an appealable event. We now hold that the issuance or denial of a certificate of occupancy is a decision subject to judicial review. Once the Town issued the certificate of occupancy, the Utsches filed a timely appeal, which the Board of Appeals had authority to consider. *See* BAR HARBOR LAND USE ORDINANCE § 15.11.02.02.

■ [¶ 14] An appeal of a certificate of occupancy may not, however, substitute for an appeal of the underlying permit. *See Juliano v. Town of Poland*, 1999 ME 42, ¶¶ 7-8, 725 A.2d 545, 548 (holding that an appeal of a stop work order constituted a challenge to the decision to issue the underlying permit and, therefore, was untimely). If the permittee has complied with the terms of a valid permit, an abutter may not challenge the issuance of the certificate of occupancy based on a defect in the permit. If, however, the permittee has meaningfully exceeded the authority contained in the permit, or otherwise violated conditions of the permit, the issuance of the certificate of occupancy may be challenged. Here, the Board of Appeals found that the square footage of the new building fell outside the outline of the original footprint and exceeded the square footage of the old building by 473.5 square feet. It also found that the new volume exceeded the old volume by 7409.9 cubic feet—approximately 60%. The permit allowed Salisbury to build only within the *footprint* of the original building. Thus, the allegation that the building exceeded the scope of the permit was appropriately addressed by the Board of Appeals, the Board's decision could be challenged in court, and the Superior Court did not err in affirming the Board's decision.

[¶ 15] Because we conclude that the Board of Appeals and the Superior Court had authority to review the issuance of the certificate of occupancy, and Salisbury does not challenge the Board's conclusion that the building exceeded both the permit and the applicable ordinance, we need not reach the issue of whether revocation of the stop work order was reviewable.

## C. Equitable Estoppel

■ [¶ 16] When a claim of equitable estoppel is presented to the Superior Court as an independent action, as it was here, the Superior Court hears the matter as a plenary action, and does not act as an appellate body. *See Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 7, 757 A.2d 773, 776; *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶¶ 11, 14, 743 A.2d 237, 241, 242. In order to obtain the adjudication of such a claim, the plaintiff must present relevant facts to the court. Salisbury never presented any facts to the court on the issue of equitable estoppel. Notwithstanding the court's imposition of two deadlines extending the time in which Salisbury could file the requisite motion,

Salisbury took no action to obtain a trial or otherwise present facts to the court.[3]

[¶ 17] Salisbury now relies on the record created at the *Board's* hearing to suggest that the Court could have reviewed that record and found facts based upon that record. In this argument, Salisbury misapprehends the nature of the court's role in adjudicating an independent claim. The evidence presented to the Board was never presented to the court in its adjudicatory capacity. Salisbury did not file the necessary motion, pursuant to M.R. Civ. P. 80B(i), seeking to have the court set the process for development of the facts on his independent claim for equitable estoppel.[4] Thus, on the record before it, the court correctly concluded that there were no facts from which it could determine that Salisbury had met his burden of proof on the estoppel claim.[5]

3. Salisbury asserted both a claim for review of the Board's certificate of occupancy and stop work order decisions and an independent equitable estoppel claim. Because the court must act as both an appellate court and trial court, different procedures apply to each claim. *Baker's Table*, 743 A.2d at 242. Thus, Salisbury was required to file a motion requesting that the court specify the future course of proceedings within ten days of filing the complaint. M.R. Civ. P. 80(B)(i). Salisbury failed to do so and presented no facts for the court to consider.

4. Through that process, if they were in agreement, the parties could stipulate that the court may act on the record below in order to avoid the expense and delay of a duplicate evidentiary presentation. *See Stewart*, 2000 ME 157, n. 3, 757 A.2d at 776. No such stipulation was presented to the court. Thus, any review of evidence presented to another tribunal would have been undertaken in an appellate posture, not applicable to the independent claim.

5. Salisbury also argues that the court should have found that the Board erred in declining to adjudicate his estoppel claim. In the ab-

The entry is:

Judgment affirmed.

sence of specific authority in the Bar Harbor ordinance, we find no error in the court's deference to the Town's interpretation of the limits of its authority.

Moreover, the facts asserted by Salisbury, even if presented appropriately to the court, would have been insufficient to support a claim of estoppel against the municipality. As a matter of law, Salisbury's alleged reliance on oral statements made by the CEO was not reasonable. We addressed this issue in *Shackford & Gooch, Inc. v. Town of Kennebunk*, 486 A.2d 102, 103 (Me.1984), where the building inspector granted a permit to build stairs and, at the same time, provided verbal authorization to build a deck on the roof of Bartley's Dockside Restaurant. The building inspector advised Dockside that a building permit for the deck was unnecessary. *Id.* "We do not consider Dockside's reliance on the inspector's spoken permission to build a deck to be reasonable reliance. Moreover, the unauthorized act of a municipal officer cannot be grounds for estopping the municipality." *Id.* at 106. Thus, to the extent Salisbury relied on the CEO's approval of his expansion, that reliance was not reasonable and, hence, Salisbury's claim of equitable estoppel could not succeed.