STATE OF MAINE
Cumberland, ss.

SUPERIOR COURT
Civil Action
Docket No. AP-08-23

ARLENE MOON and
LAURA MOON

    Plaintiffs

v.

TOWN OF BRUNSWICK,

    Defendant

and

DANIEL LIBBY and
TINA LIBBY

    Parties-in-Interest

DECISION AND ORDER
ON PLAINTIFFS' 80B APPEAL

## BEFORE THE COURT

Before the court is the appeal of Plaintiffs, Arlene Moon and Laura Moon (collectively "Plaintiffs"), pursuant to M.R. Civ. P. 80B, of Defendant Town of Brunswick's Zoning Board of Appeals' ("ZBA") decision affirming the issuance of a final Certificate of Occupancy by Brunswick Code Enforcement Officer Jeffrey Hutchinson ("CEO" or "Mr. Hutchinson") to Parties-in-Interest Daniel and Tina Libby (collectively "the Libbys").

## FACTUAL BACKGROUND

Plaintiff Arlene Moon, is a co-owner of property located at 4 Wadsworth Road, Brunswick. She and her daughter, Laura Moon, are the neighbors of the Libbys who own and operate a neighborhood store recently constructed at 42 Jordan Avenue, which abuts the Plaintiffs' property. In March 2006, the Libbys received final Site Plan approval from the Brunswick Planning Board to construct

1

and operate their store. The original Site Plan included a freestanding accessory covered trash containment structure measuring 8 feet deep by 8 feet wide at the rear of the store. After the CEO issued a building permit, the store was constructed in 2007.

In October 2007, the Libbys applied for, and were granted, a modification in the original Site Plan changing the dimensions of the containment structure to measure 4 feet deep by 16 feet wide in order to permit the structure to enclose two compressor units extruding from the rear of the store and associated with interior refrigeration units. Although the Libbys opposed the modification of the Site Plan, they did not appeal the modification. The final Site Plan calls for construction of a "4'x14' covered trash containment" structure at the rear of the Libbys' store.

On October 17, 2007, the CEO issued a temporary Certificate of Occupancy to the Libbys and later extended it through January 13, 2008. According to a letter from the CEO to the Libbys, the extension was granted in order to allow the "completion of 4'x16' containment structure." R. at Tab 3. The Libbys erected a frame structure behind their building to contain the trash and air compressor units. The structure was covered by a blue tarp.

On January 15, 2008, Mr. Hutchinson issued a final Certificate of Occupancy to the Libbys. Plaintiffs appealed the issuance of that final Certificate, arguing that (1) the noise level on the Libbys' property violates Brunswick's Zoning Ordinance; (2) the contour of the Libbys' property violates the conditions of the Planning Board Approval;[1] and (3) the accessory structure

---

[1] Plaintiffs apparently abandoned this argument during the hearing before the ZBA.

was not completed and, as a result, the final Certificate of Occupancy should not have been issued.

On May 15, 2008, the ZBA held a hearing on Plaintiffs' appeal at which Plaintiffs were represented by counsel. Following the hearing, the ZBA denied Plaintiffs' appeal. Plaintiffs asked the ZBA to reconsider its decision. This request was heard and denied on June 26, 2008. Thereafter, Plaintiffs filed the instant appeal under M.R. Civ. P. 80B on the following grounds: (1) the ZBA's decision that the accessory structure had been completed was not supported by substantial evidence in the record; (2) the ZBA's decision was arbitrary and capricious in that it ignored statements in the record that admitted that the structure was not completed; (3) the ZBA failed to act as an independent tribunal in that it gave undue deference to the position of the CEO; (4) the ZBA's decision that the CEO took a proper and accurate noise measurement demonstrating that the noise level on the Libbys' property did not exceed allowable levels was not supported by substantial evidence on the record; and (5) the ZBA failed to make written findings of fact or conclusions of law as required under Maine law.

Thereafter, the Town of Brunswick filed an unopposed motion to remand the case to the ZBA in order to allow it to make proper written findings and conclusions. Brunswick's motion was granted and the ZBA made written findings of fact and conclusions of law which have now been filed with the court.

## DISCUSSION

### I. Standard of Review

In this case, Plaintiffs have taken issue not only with the ZBA's substantive decision but also with the deference the ZBA gave to the CEO's initial decision. According to Plaintiffs, in this case the ZBA "adopted the

3

erroneous view of the CEO, rather than exercising the independent oversight that the" Brunswick Ordinance requires of them. Pls.' Br. at 7. In light of the fact that rule 80B requires this court review to the operative decision of the municipality, Plaintiffs' contention squarely raises a question regarding which decision is on review – the decision of the ZBA or that of the CEO.

The Law Court has previously addressed the role of municipal Zoning Boards of Appeal and the circumstances under which they operate either as an appellate body or a tribunal of original jurisdiction. *See e.g. Gensheimer v. Town of Phippsburg*, 2005 ME 22, ¶¶ 15-16, 868 A.2d 161, 166; and *Stewart v. Town of Sedgwick*, 2000 ME 157, 757 A.2d 773. According to the court in *Stewart*, "unless the municipal ordinance explicitly directs otherwise, a Board must conduct a hearing de novo." *Stewart*, ¶ 7, 757 A.2d at 776. "Thus, in the absence of an explicit ordinance creating a purely appellate review by the Board, the function of the Board is to take evidence, make factual findings, and apply the laws and ordinance to the petition or application at issue, and to do so independently of the decision, if any, of a lower tribunal." *Id.* Notwithstanding this general rule, "[a] municipality may, . . . by ordinance, provide that its Board of Appeals hear appeals in a solely appellate capacity." *Id.* When a municipal ordinance prescribes an appellate function,

> the Board will review the record of the proceedings before the previous tribunal, review the evidence presented to that body, review the tribunal's written or recorded findings, hear oral or written argument of the parties, and determine whether the lower tribunal erred in reaching its decision.

*Id.*

4

In this case, although Plaintiffs contend that Brunswick's Ordinance required the ZBA to conduct a de novo review of the CEO's decisions, the court disagrees. The relevant section of Brunswick's ordinance provides:

> In hearing an administrative review appeal from a decision of the Codes Enforcement Officer, Planning Board or Village Review Board, the Zoning Board of Appeals shall:
>
> a.    Examine all application documents, Ordinance requirements and Finding of Fact and Conclusions prepared by the Codes Enforcement Officer or Board whose decision is being appealed.
>
> b.    Determine on the basis of the entire record presented to the Codes Enforcement Officer or the Board whose decision is appealed from whether the Codes Enforcement Officer of such Board could reasonably have found the facts and reached the conclusions upon which the decision under appeal was based.
>
> c.    Determine whether the prior Board's decision was based on substantial evidence.
>
> d.    Not substitute the judgment of the Zoning Board of Appeals for the judgment of the Codes Enforcement Officer or the Board whose decision is under appeal.
>
> e.    If the Zoning Board finds that the Codes Enforcement Officer or the Board was not erroneous in its review of the application, the original determination shall be upheld.

Brunswick, Me., Zoning Ordinance § 703.4(C)(1) (R. at Tab 17).

Under the express language of Brunswick's ordinance, the ZBA in this case was required to review the CEO's decisions in an appellate capacity rather than as a tribunal of original jurisdiction. As such, this court will review the CEO's decision under the standard applicable to 80B appeals. *See Mills v. Town of Eliot*, 2008 ME 134, ¶ 16, 955 A.2d 258, 264 (concluding that the decision of the Code Enforcement Officer is the operative decision on review). Under that standard, this court reviews an administrative decision for errors of law, abuse of discretion or findings of fact unsupported by the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168. When "reviewing an

5

administrative . . . decision, the issue before the court is not whether it would have reached the same conclusion as the [administrative tribunal], 'but whether the record contains competent and substantial evidence that supports the result reached.'" *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 8, 762 A.2d 551, 555 (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258, 1261). "Substantial evidence is evidence that a reasonable mind would accept as sufficient to support a conclusion." *York v. Town of Ogunquit*, 2001 ME 53, ¶ 6, 769 A.2d 172, 175. The court may not substitute its own judgment for that of the administrative tribunal. *See id.;* and *Brooks v. Cumberland Farms, Inc.* 1997 ME 203, ¶ 12, 703 A.2d 844, 848. The administrative decision is not wrong because the record is inconsistent or a different conclusion could be drawn from it. *Twigg v. Town of Kennebunk*, 662 A.2d 914, 916 (Me. 1996). The burden of persuasion in an action challenging an administrative decision rests on the party seeking to overturn its decision. *See Sawyer Envtl. Recovery Facilities, Inc. v. Town of Hampden*, 2000 ME 179, ¶ 13, 760 A.2d 257, 260.

II.    Did the CEO Err When He Issued the Final Certificate of Occupancy?

Moving to the merits of the decisions on appeal, Plaintiffs contend that the Certificate of Occupancy was issued in error for two reasons. First, Plaintiffs argue that the air compressors contained by the accessory structure emit a noise level that exceeds permissible levels under the ordinance and, therefore, the final Certificate should not have been issued. Second, Plaintiffs contend that the structure was not complete and therefore the issuance of the final Certificate was improper.

A.    Noise Levels[2]

Although the CEO did not make express findings of fact and conclusions of law when he issued the final Certificate of Occupancy, he did file a "staff report" with the ZBA in which he explained the bases for his decision to issue the final Certificate. (*See* R. at Tab 6.) According to the staff report, on the day that he issued the final Certificate of Occupancy, the CEO "conducted a noise level study" at the Libbys' property "to determine compliance with the Town's noise standards." *Id.* The CEO used "an Extech Instruments Digital Sound Level Meter meeting ANSI Type II standards and tested the sound levels at the Libbys' rear property line." *Id.* He found the sound levels to be between 41.8 and 44.6 dBA, which he concluded are compliant with the standards outlined in the ordinance. *Id.*

On appeal, Plaintiffs assert that the CEO improperly measured the sound levels because he failed to take his measurements at the top of a fence running along the back of the Libbys' property. According to Plaintiffs, because the CEO's measurement failed to account for the movement of noise over the top of the fence, his measurement was erroneous. Plaintiffs further contend that a sound measurement that they completed using a device from Radio Shack demonstrates that the noise levels emanating from the Libbys' property exceed allowable limits under the Ordinance. According to Plaintiffs, their

_____

[2]Although one issue raised by Plaintiffs is that the ZBA erred when it concluded that the issue of noise levels was not properly before it, the court need not decide this issue. In light of the court's conclusion that the operative decision on review in this case is that of the CEO, rather than the ZBA, and in light of the fact that the CEO's staff report indicates he considered noise levels when deciding whether to issue the final Certificate of Occupancy, the court will consider whether his findings in that regard are supported by substantial evidence on the record.

measurements, conducted a month after the final Certificate of Occupancy was issued, yielded readings of 57 and 59 dBA.

Under Brunswick's Ordinance, "[t]he equivalent sound level measured in dBA resulting from any activity shall not exceed at any point on or beyond the lot line" 55 dBA during the day and 45 dBA at night in Town Residential Areas, the zone in which the Libbys' property is located. (R. at Tab 17 p. 19.) The Ordinance further provides that sound measurements must be taken with meters that meet "Type I or Type II specifications for ANSC standards."[3] *Id.*

Plaintiffs do not take issue with the meter used by the CEO. Rather, they take issue with where the CEO conducted his measurements. According to Plaintiffs, the CEO's failure to measure the noise levels at or above the top of the fence was improper and, as a result, his determination that the noise emanating from the Libbys' property did not exceed permissible levels was clearly erroneous. The court disagrees.

Although the Ordinance provides that noise levels may not exceed permissible levels "at any point *on or beyond* the lot line," it does not prescribe where, precisely, noise level measurements are to be taken. (R. at Tab 17 p. 19.) (emphasis added). In this case, the CEO took his measurement on the Libbys' lot line using a machine that met the requirements of the ordinance. There is no evidence in the record demonstrating that the noise emanating from the Libbys' property prior to the issuance of the Certificate of Occupancy, either at the lot line or beyond it, exceeded allowable levels.[4] Based on the language of the

---

[3] Although the court notes that Brunswick's ordinance requires meters to meet "ANSC" standards and the CEO's staff report references "ANSI" standards, Plaintiffs do not take issue with this discrepancy.

[4] While Plaintiffs' appeal to the ZBA was accompanied by a "noise statement" indicating that Plaintiffs had conducted their own measurement on February 14, 2008 and had measured noise levels exceeding those

ordinance and the evidence in the record, the court cannot conclude that the CEO's measurement or his determination that the Libbys' property was compliant with the ordinance was clearly erroneous.

B.    Completion of the Accessory Structure

In addition to their arguments regarding noise levels, Plaintiffs also take issue with the issuance of the final Certificate of Occupancy because, according to Plaintiffs, the accessory structure was not complete when the Certificate was issued.

The issuance of Certificates of Occupancy is governed by Section 704.2(B) of Brunswick's Ordinance. Section 704.2(B) provides, in pertinent part:

> An applicant for a building permit shall also make application for a Certificate of Occupancy, which application must be received before a building permit may be issued. *Upon completion of the work permitted by the building permit*, the Codes Enforcement Officer shall issue the Certificate of Occupancy upon a finding that the building, structure or land and the use or occupancy thereof comply with the provisions of this Ordinance, with all provisions of any site plans or subdivision plans approved by the Planning Board or Board of Appeals. . . .

Brunswick Ordinance § 704.2B (emphasis added).

In this case, there is no dispute that, at the time the final Certificate was issued, the accessory structure had been framed using wood materials but was enclosed by a blue tarp rather than by more permanent roofing and siding materials. Plaintiffs contend that the lack of permanent roofing and siding rendered the accessory structure incomplete and, therefore, the issuance of the final Certificate of Occupancy was improper.

---

permitted under the ordinance, that measurement was taken after the Certificate of Occupancy was issued. Therefore, that measurement does not bear on the measurement taken by the CEO or on his issuance of the Certificate of Occupancy on January 15, 2008. Moreover, Plaintiffs conducted their measurements with a device that does not appear to comply with the requirements of the ordinance.

9

In response, Brunswick argues that the CEO's decision should be affirmed because there was no requirement that the structure be enclosed with more permanent material. According to the Staff Report issued by the CEO, although the Planning Board's approval of the accessory containment structure contemplated that the structure would be "covered," the Planning Board had not specified what type of material needed to be used. According to the CEO, the combination of the lack of specification from the Planning Board regarding construction materials and his determination that the blue tarp adequately abated any noise issuing from the air compressors supported a conclusion that the accessory structure was sufficiently complete to justify the issuance of the final Certificate of Occupancy. (*See* R. at Tab 6.)

A review of the Planning Board decision approving the modification to the dimensions of the accessory structure confirms that the Board's decision was limited to a determination that the Libbys could "swap" an 8x8 accessory structure for a 4x16 accessory structure. (R. at Tab 7, p. 4.) No mention was made in that decision of which materials must be used to construct the accessory structure. Similarly, the Site Plan, which indicates that the accessory structure is to be "covered," does not specify how that requirement is to be accomplished. The Board did, however, order that "prior to construction, the applicant shall provide a building plan to be approved by the Code Enforcement Officer and the Fire Chief." *Id.* The record before the court does not contain any such building plan.

In the context of appeals of Certificates of Occupancy, the Law Court has previously explained that the issuance of such certificates is indeed an appealable issue. *Salisbury v. Town of Bar Harbor*, 2002 ME 13, 788 A.2d 598. The

10

court has also clarified, however, that "[a]n appeal of a certificate of occupancy may not . . . substitute for an appeal of the underlying permit. *Id.* ¶ 14, 788 A.2d at 602 (citing *Juliano v. Town of Poland*, 1999 ME 42, ¶¶ 7-8, 725 A.2d 545, 548). According to the court in *Salisbury*,

> [i]f the permittee has complied with the terms of a valid permit, an abutter may not challenge the issuance of the certificate of occupancy based on a defect in the permit. If, however, the permittee has meaningfully exceeded the authority contained in the permit, or otherwise violated conditions of the permit, the issuance of the certificate of occupancy may be challenged.

*Id.*

In this case, a determination of whether the accessory structure could properly be deemed complete if enclosed with a tarp rather than with more permanent materials depends entirely on the Site Plan, any building permit issued by the Code Enforcement Officer and his approval of any modified building plan relating to the accessory structure.

In this case, the only specifications in the record regarding the Libbys' property and the construction of their store are contained in the Site Plan. The record before the court does not contain a copy of a building permit nor does there appear to be any other indication of what the building specifications for the accessory structure were.[5]

As outlined above, as the party appealing the issuance of the CEO's decision, it is the Plaintiffs' burden to demonstrate that his decision was unsupported by substantial evidence on the record. Although the court recognizes that a blue tarp may not be the most permanent material with which to cover an accessory structure, there is no evidence in the record suggesting that

---

[5] For example, the record does not contain the Brunswick Building Code or any other guideline specifying which building materials must be used to build or "cover" an accessory structure.

the Libbys' were required to do anything other than "cover" the structure. The CEO's staff report outlines his determination that covering the structure with a tarp was not prohibited by the ordinance or counter to the Site Plan approved by the Planning Board. In the absence of any record evidence demonstrating something to the contrary, the court cannot conclude that the CEO's decision on that point was erroneous.

Therefore, the entry is:

The decision of the Code Enforcement Officer for the Town of Brunswick issuing a final Certificate of Occupancy to Parties-in-Interest, Daniel and Tina Libby, is hereby AFFIRMED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

November 20, 2008

Robert E. Crowley
Justice, Maine Superior Court

12

Cumberland County
P.O. Box 287
ortland, Maine 04112-0287

DANIEL LIBBY
TINA LIBBY
2 WADSWORTH RD
BRUNSWICK ME 04011

laine 04112-0287

PATRICK SCULLY ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04104-5029

OF COURTS
rland County
Box 287
aine 04112-0287

DOUGLAS PAYNE ESQ
PO BOX 550
BRUNSWICK ME 04011