STATE OF MAINE                                           SUPERIOR COURT
YORK, ss.                                              Civil Action
DOCKET NO. AP-16-0034
AP-16-0035

| | |
|---|---|
| DANIEL RAPOSA, | ) |
| | ) |
| SUSAN RAPOSA, | ) |
| | ) |
| and | ) **ORDER ON PLAINTIFFS'** |
| | ) **MOTION TO ALTER OR AMEND** |
| JOSHUA GAMMON, d/b/a GAMMON | ) **THE JUDGMENT** |
| LAWN CARE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| TOWN OF YORK, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| PETER MARCURI, | ) |
| | ) |
| Party-in-Interest. | ) |

## I.    BACKGROUND

The instant consolidated cases arise out of a decision of the Town of York's Code

Enforcement Officer ("CEO") finding no land use violations existed on property owned by

plaintiff Joshua Gammon. On January 26, 2018 the court issued an Order dismissing the cases for

lack of jurisdiction.

On February 2, 2018, plaintiffs Daniel and Susan Raposa filed a Motion to Alter or Amend

the Judgment, arguing that the court did have jurisdiction, that the defendants did not preserve the

argument on appeal, and that the Board of Appeals properly heard the appeal from the CEO's determination. (Pl.'s Mot. 2.)

## II. STANDARD OF REVIEW

Pursuant to Rule 59(e), a party may move to alter or amend a judgment no later than 14 days after its entry. M.R. Civ. P. 59(e). The court has the discretion to alter or amend a judgment "when convinced it was erroneous, and substitute the proper judgment in its place." *Most v. Most*, 477 A.2d 250, 258 (Me. 1984) (citations omitted). Thus, the court may alter a judgment to either correct a mistake of fact or law·or simply to reach a more just result. *Id.*

## III. DISCUSSION

### a. Subject Matter Jurisdiction to Review the Board's Decision

In their motion to alter or amend the judgment, plaintiffs cite to *Lakeside at Pleasant Mt. Condo. Ass'n v. Town of Bridgton*, 2009 ME 64, ¶ 7, 974 A.2d 893 for support of their argument that the court has jurisdiction to hear the cases. In *Lakeside*, a condominium association requested that the Town's CEO investigate whether a neighboring inn was violating the Town's Shoreland Zoning Ordinance by making commercial use of a float located in an area zoned for residential and recreational development only. *Id.* ¶ 7. The CEO found no violation and the condominium association appealed to the Town's Board of Appeals, who affirmed the CEO's determination. *Id.* ¶¶ 7-8. The plaintiff then filed a complaint in the Super Court under Rule 80B and subsequently appealed the court's decision to the Law Court. *Id.* ¶ 8.

Although the case does not address jurisdiction, plaintiffs argue that the courts review of the CEO and Board's decision in *Lakeside* indicates that it has jurisdiction to review the present decision.

The court is unpersuaded by this argument. The issue of this court's jurisdiction is not

2

addressed in *Lakeside*. As discussed in this court's previous order, the Law Court affirmed its decision in *Herrle v. Town of Waterboro*, 2001 ME 1, 763 A.2d 1159 holding that this court lacks jurisdiction to review such decisions in *Farrell v. City of Auburn*, 2010 ME 88, 3 A.3d 385, which was decided after the *Lakeside* decision. Additionally, the court notes that the Superior Court (Cumberland County, *Horton, J.*) recently reached the same decision as this court in *Bowditch v. Town of Sebago*, No. CUMSC-AP-16-16, 2016 Me. Super. LEXIS 177 (August 29, 2016), a copy of which plaintiffs attached to their motion. In *Bowditch*, the court likewise concluded that it lacked jurisdiction over a Board of Appeals decision which overturned a CEO's determination that an ordinance was not violated and refusal to bring an enforcement action. *Id.* at *3-4. After examining *Herrle, Farrell,* and 30-A M.R.S. § 2691(4), the court concluded that it lacked jurisdiction and declined to hear the appeal, stating:

> [T]he determination whether to initiate any actual enforcement action, as opposed to a notice of violation and accompanying order, rests with the [Selectmen], not the CEO. Moreover, if judicial review is available in this case, it would be of the [Board of Appeals] decision, not the CEO's decision directly. The [Board's] decision is still advisory as far as any enforcement action is concerned, and therefore is not subject to judicial review.
>
> Likewise, the fact that the CEO's decision not to issue a notice of violation was based on what the Plaintiff's [sic] claim is an incorrect reading of the Ordinance does not change the outcome. The rule of *Herrle* does not allow the court, in deciding whether judicial review is available, to examine the reasoning underlying a municipal decision not to initiate enforcement action. To examine the reasoning behind the decision would be to conduct judicial review. A municipal decision either is subject to judicial review or is not. The [Board's] decision in this case is not.

*Id.* at *16.

Given prior Law Court precedent and the Superior Court's recent decision in *Bowditch*, the court reaffirms its holding that it lacks jurisdiction to review the instant decision and declines to alter or amend the judgment on this ground.

3

### b. Whether the Issue of Jurisdiction Was Preserved

Next, plaintiffs argue that even if the court lacks jurisdiction, defendants failed to preserve this issue on appeal by raising it before the Board of Appeals. Again, plaintiffs cite to *Lakeside* for support. In *Lakeside*, the court discussed:

> On appeal, both the Town and Shawnee Peak raise issues that were not raised before the Board of Appeals. Shawnee Peak argues that [Board] did not have jurisdiction to hear Lakeside's appeal of the[CEO's] decision because the Town's Shoreland Zoning Ordinance does not specifically give the Board jurisdiction to hear appeals of enforcement actions and because Lakeside does not meet the definition of aggrieved party because no permit or variance was granted for the float. Shawnee Peak also argues that Lakeside's appeal to the Board was untimely. Additionally, the Town argues that Lakeside's Rule 80B appeal should have been denied because the swim float is not a "land area," and, therefore, the Town's Shoreland Zoning Ordinance did not even apply. Because Shawnee Peak and the Town did not raise these issues before the Board, the issues are unpreserved and we do not address them.

*Lakeside*, 2009 ME 64, ¶ 14 n.2, 974 A.2d 893 (citation omitted).

Although it is well-established that parties can fail to preserve arguments by not raising them at earlier stages of proceedings, defendants needed not raise the issue of this court's appeal at before the Board because it was not ripe for resolution at that stage. Thus, the court finds that the issue of jurisdiction did not need to be raised before the Board and declines to alter or amend the decision on this basis.

### c. Whether the Board Properly Heard the Matter

Finally, plaintiffs argue that the Town's Board of Appeals properly heard and decided the appeal from the CEO's refusal to find a violation of the Town's Ordinance. (Pl.'s Mot. 4.) This challenge is off-base. In its January 26 Order, the court did not address whether the Board had proper jurisdiction to address the appeal below; it only determined that it lacked jurisdiction to hear the appeal to this court. Again, the court reaffirms its conclusion that it lacks jurisdiction to

4

hear the present case, notwithstanding whether or not the Board had jurisdiction to address it below. Consequently, plaintiffs' motion to alter or amend the judgment is denied.

## IV.    CONCLUSION

For the reasons set forth above, this court lacks jurisdiction to review this action. Plaintiffs' motion to alter or amend the judgment is denied.

The clerk shall make the following entry on the docket:

Plaintiffs' motion to alter or amend the judgment is hereby DENIED.

SO ORDERED.

DATE: May $\underline{16}$, 2018

_____
John O'Neil, Jr.
Justice, Superior Court

ENTERED ON THE DOCKET ON: __5/16/18__

5

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
DOCKET NO. AP-16-0034
AP-16-0035

DANIEL RAPOSA, )
)
SUSAN RAPOSA, )
)
and )
) **ORDER ON DEFENDANT'S**
) **MOTION TO DISMISS**
JOSHUA GAMMON, d/b/a GAMMON )
LAWN CARE, )
)
Plaintiffs, )
)
v. )
)
TOWN OF YORK, )
)
Defendant, )
)
and )
)
PETER MARCURI, )
)
Party-in-Interest. )

## I. BACKGROUND

This case arises out of a decision of the Town of York's Code Enforcement Officer

("CEO") finding no land use violations existed on property owned by plaintiff Joshua Gammon.

The property in question is located at 632 York Street in York, Maine, Lot 46-17A (the

"Gammon Property"). (R. 40.) Mr. Gammon purchased this property from party-in-interest Peter

Marcuri in 2014. (R. 40.) Marcuri had used the Gammon Property in his excavation business for

several decades before selling it to Gammon. (R. 63.)

1

Mr. Marcuri originally purchased land located at 650 York Street in York in 1983. (R.100.) The Marcuri Parcel was used for Marcuri's excavation business and also served as Marcuri's residence. (R. 35.) Marcuri purchased an abutting parcel from the Estate of Richard Young, Lot 60 in a subdivision that the Town approved in 1975, in November, 2014. (R. 38.) Marcuri then merged the two parcels and then divide it into two lots, one at 650 York Street and one at 632 York Street, which is the subject Gammon Property. (R. 218.)

In November 14, 2014, Mr. Marcuri deeded the Gammon Property to Mr. Gammon. (R. 36.) Gammon has used the property in his commercial landscaping business since purchasing it in 2014. (R. 40.)

Plaintiffs Daniel and Susan Raposa own abutting property located at 660 York Street in York, Maine. On March 26, 2016, the Raposas sent an email to the Town's CEO expressing concern about the division of the Marcuri's property and Gammon's use of the property and requesting the CEO investigate these concerns. (R. 43.)

On April 20, 2016, the CEO sent a reply stating that the division of the property resulted in legally non-conforming grandfathered lots that were exempt from her jurisdiction. (R. 44.) The CEO explained "the uses on the lots are consistent with the previous uses, and no violations are warranted at this time." (R. 44.)

On May 19, 2016, the Raposas appealed the CEO's decision to the Town's Board of Appeals (the "Board"). (R. 42.) The Board held three hearings on the appeal. The first hearing was held on June 8, 2016. (R. 58.) At this hearing, Mr. Raposa testified about his discussions with the CEO, but the matter was continued because the CEO was unavailable. (R. 58-75.) The second hearing was held on June 22, 2016. (R. 131.) At this hearing, the Raposas, their counsel, Mr. Gammon's counsel, the CEO, and other abutters all submitted testimony. (R. 116-154.) The

Raposas' counsel testified that the Raposas sought a finding that the CEO had the authority to issue a citation for a legally non-conforming lot and that the CEO erred by finding no violations at the property. (R. 121-122.) The CEO stated that had she known that the parcel in question was in an existing subdivision, it would have changed her conclusion of whether the parcels were non-conforming. (R. 127.) The Board concluded the hearing without coming to a decision, instead seeking an opinion from the Town Attorney on the legal status of the parcel. (R. 131-133.)

The Board held a final hearing on July 27, 2016, hearing further testimony from the CEO and considering the response from the Town Attorney. (R. 188-189.) The Town Attorney concluded that Marcuri's division of land required Board approval. (R. 180.) Following a discussion about this conclusion, the Board agreed and granted the Raposas' appeal. (R. 197.)

The Board issued a written decision on August 24, 2016 (R. 218-219.) In this decision, the Board stated:

> 14) The lot in question is not a legally created lot of record since Planning Board approval to divide any lot in an existing approved subdivision is required; and 15) The CEO determination of 10 Apr 2016 that because the lots are recorded in the Registry of Deeds they are beyond her jurisdiction is therefore in error.

(R. 219.) The CEO has yet to issue a notice of violation following this decision.

Both the Raposas (No. AP-16-34) and Mr. Gammon (No. AP-16-35) appealed this decision to this court. The Raposas do not challenge the July 27 decision of the Board, but instead challenge several factual findings the Board made in its August 24 written decision. The two appeals were then consolidated. The Town moved to dismiss the appeals, arguing that the Board's decision was purely advisory and had no legal consequence. Gammon declined to submit a reply brief, instead joining the Town's position. The Raposas, however, opposed the motion.

## II.    STANDARD OF REVIEW

In its intermediate appellate capacity, this court reviews decisions of administrative bodies for abuse of discretion, errors of law, and findings not supported by substantial evidence. *Otis v. Town of Sebago*, 645 A.2d 3, 4 (Me. 1994) (citation omitted). When the court's jurisdiction is challenged, it is the plaintiff's burden of establishing that jurisdiction is improper. *Commerce Bank & Tr. Co. v. Dworman*, 2004 ME 142, ¶ 8, 861 A.2d 662 (citing *Interstate Food Processing Corp. v. Pellerito Foods, Inc.*, 622 A.2d 1189, 1191 (Me. 1993)).

## III.    DISCUSSION

### a.    Subject Matter Jurisdiction to Review the Board's Decision

Generally, when an ordinance allows an appeal to a Board of Appeals from violation determination by a CEO, the Board's role is advisory in nature and not subject to judicial review. *Herrle v. Town of Waterboro*, 2001 ME 1, ¶ 9, 763 A.2d 1159 (citing *Pepperman v. Town of Rangeley*, 659 A.2d 280 (Me. 1995)). Because of the Board of Selectmen's discretion to decide whether or not to bring an enforcement action, this is true even though the Board's interpretation of an ordinance is more than a mere "recommendation" and the CEO may have a duty to issue a violation pursuant to the Board's order. *Id.*

For example, the facts in *Herrle v. Town of Waterboro*, 2001 ME 1, 763 A.2d 1159, closely resemble those here. In *Herrle*, the Waterboro Board of Selectmen, in lieu of the CEO because of a conflict of interest, declined an abutting property owner's request to initiate an enforcement operation against an individual who was operating a gravel pit, which the landowners claimed was a grandfathered use. *Id.* ¶ 2. The neighbor appealed this decision to the Zoning Board of Appeals ("ZBA"), arguing that the Selectmen had incorrectly applied the ordinance. *Id.* ¶ 3. The Board affirmed the Selectmen's decision and the neighbors appealed to this court, who reversed the

ZBA's decision. *Id.* ¶¶ 4-5. However, on appeal, the Law Court concluded that the ZBA's decision, as an "interpretation" appeal from a violation determination by the Board of Selectmen, was not subject to judicial review. *Id.* ¶ 9. The Law Court reasoned that because the Selectmen retained discretion to decide whether or not to institute an enforcement action and no such enforcement action had been taken, the ZBA's role in the appeal was merely advisory. *Id.* Consequently, "[t]he only legal significance of the Superior Court's decision, therefore, was to provide a declaratory judgment on the issue of whether that violation determination was correct. Even if we were to affirm the Superior Court's decision finding error in the ZBA's legal analysis, the Board of Selectmen could still decide in their discretion not to bring an enforcement action against [the landowner]." *Id.* ¶ 10.

More recently, in *Farrell v. City of Auburn*, 2010 ME 88, 3 A.3d 385, the Law Court again applied the rule laid out in *Herrle* and held:

> [T]o the extent that the Board's decision can be treated as providing an interpretation of provisions of the zoning ordinance, the only legal significance of that decision is to provide an advisory opinion on the issue of whether the CEO's violation determination was correct. The Board's decision is advisory in nature because the CEO retains the discretion to decide whether or not to initiate an enforcement action.

*Id.* ¶ 17.

Plaintiffs, however, argue that these cases are inapplicable. Specifically, plaintiffs cite to *Salisbury v. Town of Bar Harbor*, 2002 ME 13, 788 A.2d 598, and *Adams v. Town of Brunswick*, 2010 ME 7, 987 A.2d 502, for the proposition that reliance on *Herrle* and its progeny is misplaced.

In *Salisbury*, the Law Court found that Bar Harbor's ZBA had jurisdiction to hear an appeal from the issuance of an occupancy permit following the revocation of a stop work order. *Salisbury*, 2002 ME 13, 788 A.2d 598. The Law Court noted that although *Herrle* "precludes the court's intrusion into municipal decision-making when a municipality decides whether or not to undertake an enforcement action," an action may still be subject to judicial review if the Town undertakes a

subsequent enforcement action and review is authorized by an appropriate law and ordinance. *Id.* ¶ 11. Because the Law Court had held previously that the issuance of a certificate of occupancy was reviewable and the plaintiff did not collaterally attack the permit or applicable ordinance, it declined to address whether the revocation of the stop work order was reviewable and instead directly reviewed the certificate of occupancy. *Id.* ¶¶ 13, 15.

In *Adams*, plaintiff sought the CEO's opinion on whether a property owner's plan to house eleven students would create a boarding house, which was prohibited in the applicable zone. *Adams*, 2010 ME 7, ¶ 4, 987 A.2d 502. After reviewing the proposed leases, the CEO wrote a memo concluding that the owner's plan was an allowable "two unit residential" use. *Id.* On appeal to the Law Court, the Town and owner argued that the CEO's denial to find a violation was final and therefore the ZBA and court lacked jurisdiction to hear any appeal. However, the Law Court disagreed, reasoning: (1) "[S]ection 705.2 of the Ordinance gives the CEO prosecutorial discretion when a complaint is filed asserting that ][the] Ordinance *is being* violated,'" and the neighbors only complained that the ordinance was going to be violated; and (2) Because "[t]he CEO's May 30 memorandum was an advisory opinion, not a decision declining to take an enforcement action, because absent a violation occurring at that time there was nothing to enforce," the CEO did not exercise prosecutorial discretion. *Id.* ¶¶ 9, 10.

These cases are distinguishable from both *Herrle* and this appeal. As in *Herrle*, the CEO in the instant case was tasked to determine whether there was a current violation, not a potential violation as in *Adams*. Additionally, unlike *Stewart*, there has been no subsequent, reviewable enforcement action. Under the Town of York's Zoning Ordinance, the Board of Selectmen retains discretion to decide whether or not to bring an enforcement action even though the CEO may have

a duty to issue a notice of violation.[1] (R. 31; York, Me., Zoning Ordinance §§ 19.3-19.4.) Consequently, the Board's review of the CEO's decision is advisory and unreviewable by this court.

Further, the legislature recently amended the statute governing municipal boards of appeals, 30-A M.R.S.A. § 2691, to provide:

> Absent an express provision in a charter or ordinance that certain decisions of its code enforcement officer or board of appeals are only advisory or may not be appealed, a notice of violation or an enforcement order by a code enforcement officer under a land use ordinance is reviewable on appeal by the board of appeals and in turn by the Superior Court under the Maine Rules of Civil Procedure, Rule 80B.

30-A M.R.S.A. § 2691(4). It is clear that this legislation was intended to permit Board review of notices of violation and enforcement orders. However, by the plain terms of the statute, only notices of violation and enforcement orders are reviewable. Because no notice of violation or enforcement order has been issued and the Board only ruled on the failure to find a violation, its decision remains advisory and this court lacks subject matter to review it. Consequently, defendant's motion to dismiss is granted.

---

[1] Section 19.4 of York's Zoning Ordinance Provides, "The Board of Selectmen, upon notice from the Code Enforcement Officer, is hereby authorized and directed to institute any and all actions and proceedings, either legal or equitable, including seeking injunctions of violations and the imposition of fines, *that may be appropriate or necessary* to enforce the provisions of this Ordinance in the name of the Town." (R. 31.) (emphasis added)

7

## IV. CONCLUSION

For the reasons set forth above, this court lacks subject matter jurisdiction to review this matter. Defendant's motion to dismiss is granted.

The clerk shall make the following entry on the docket:

Defendant's motion to dismiss is hereby GRANTED.

SO ORDERED.

DATE: JANUARY 25, 2018

_____
John O'Neil, Jr.
Justice, Superior Court

**ENTERED ON THE DOCKET ON:** _1/26/18_

8