Philip F. BAKER

v.

TOWN OF WOOLWICH.

Supreme Judicial Court of Maine.

Argued Sept. 10, 1986.

Reargued in part Jan. 7, 1987.[*]

Decided Jan. 27, 1987.

---

[*] The reargument related solely to the issue of attorney fees.

Orville T. Ranger (orally), Brunswick, for plaintiff.

Eliot Field (orally), Wiscasset, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS **, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

McKUSICK, Chief Justice.

On the complaint filed by plaintiff Philip Baker pursuant to M.R.Civ.P. 80B, the Superior Court (Sagadahoc County) affirmed the decision of the Board of Appeals of defendant Town of Woolwich that Baker's businesses of auto body repair and used car rental and sales do not constitute a "business operated from a home" within the meaning of the exception to the Town's residential zoning restrictions. On the Town's counterclaim to enforce the zoning ordinance, the Superior Court, after hearing, permanently enjoined Baker from conducting any of those businesses in the Woolwich residential zone, imposed a fine of $1,000, and awarded attorney's fees to the Town in the amount of $7,268.66. On Baker's appeal to this court we affirm that judgment except for the attorney fees award. We determined ourselves the allowable attorney fees before the Superior Court as well as before this court.

Intending to build a garage on property located in a residential zone, Baker obtained a building permit from the Town of Woolwich in 1974. That permit expressly stated that any business use of the proper-

** Because Roberts, J., did not sit at reargument, he does not participate in part 4 of this opinion.

ty would require prior approval from the Town. In 1975 Baker completed construction of a one-story garage and without obtaining the required prior approval from the Town commenced doing auto body repairs. At that time Baker did not live in the new building, nor was it habitable. Sometime in 1979, well after his auto body business was in full operation, Baker began constructing living quarters above the garage. He moved into those quarters sometime in 1980.

In 1983, Baker began expanding his business into used car rental and sales. In order to obtain the requisite dealer plate for his new enterprise, Baker applied to the Woolwich Planning Board for a zoning exception on the ground that his businesses qualified as a "business operated from a home." Both the Planning Board and the Board of Appeals to which Baker appealed denied his request. His 80B complaint and the Town's enforcement counterclaim followed in the Superior Court.

### 1. The "business operated from a home" exception

The primary issue before us is whether the Woolwich Board of Appeals, in deciding that Baker's businesses did not qualify for the exception for a "business operated from a home," "abused its discretion, committed an error of law, or made findings not supported by substantial evidence in the record." *Driscoll v. Gheewalla*, 441 A.2d 1023, 1026 (Me.1982). The controlling zoning ordinance provides for that exception as follows:

Business operated from a home shall be permitted as an exception provided it is not injurious to health or the environment, nor because of smell, noise, smoke, fumes, nor for any other reason, is objectionable or detrimental to the well being of the Town. Provision must be made for parking on the premises to accommodate the average number of vehicles which will be attracted by the business at any time.

Art. 4, § C, Town of Woolwich Planning Ordinance.

■ The Planning Board found that "it is implicit [in the exception] that the home must exist first and be the predominant use or function of the premises." Finding that Baker's "primary or intended use" of the

premises was "commercial or business as opposed to residential" and that Baker's use of the premises has in fact "been at least half, if not predominantly business oriented," the Planning Board refused to grant Baker the exception. We agree as a matter of law with the Planning Board's interpretation of the exception. *See Putnam v. Town of Hampden*, 495 A.2d 785, 787 (Me.1985). That interpretation is supported by case law. In examining a similar exception, the New Hampshire Supreme Court in *Town of Milford v. Bottazzi*, 121 N.H. 636, 433 A.2d 1269 (1981), explained that only those home occupations " 'customarily incidental to the use of the premises as a dwelling, and ... subordinate to the residential use of the property' " merit exceptions. *Id.* 433 A.2d at 1270 (quoting 2 R. Anderson, *American Law of Zoning* § 13.02 (2d ed.1976)). That court noted that the term "home occupation" is "widely used in zoning ordinances throughout the country," and emphasized that "all [definitions of that term] have as a common purpose the allowance of only those businesses that do not adversely affect or undermine the residential character of the neighborhood." *Id.* Most important, the court found that "the operation of a public [re-

pair] garage, however, has been held not to be a home occupation." *Id.*, 433 A.2d at 1271 (citing *Perez v. Borough of Kennett Square*, 18 Pa.Commw. 425, 427, 336 A.2d 437, 438 (1975); *Piper v. Moore*, 163 Kan. 565, 574, 183 P.2d 965, 972 (1947)).

■ On Baker's complaint under Rule 80B, the Superior Court correctly affirmed the decision of the Woolwich Board of Appeals that the use of his property in a residential zone did not qualify for the "business operated from a home" exception. The Superior Court correctly held that that exception did not provide Baker any defense to the injunctive relief and civil penalties sought by the Town on its counterclaim.

### 2. *Validity of the 1974 ordinance*

Baker makes a further argument for reversing the injunction, fine, and attorney fees. In constructing this argument Baker first contends that the Town has never enacted a valid comprehensive plan pursuant to 30 M.R.S.A. § 4961 (1978 & Supp. 1986).[1] Next, he contends that because 30 M.R.S.A. § 4962(1)(A) (1978) [2] requires that zoning ordinances be enacted "pursuant to and consistent with a comprehensive plan,"

---

**1.** The statute governing comprehensive plans at the time the 1974 ordinance was enacted, 30 M.R.S.A. § 4961 (1978), provided as follows:

1. Definition. "Comprehensive plan" shall mean a compilation of policy statements, goals, standards, maps and pertinent data relative to the past, present and future trends of the municipality with respect to its population, housing, economics, social patterns, land use and water resources and their use, transportation facilities and public facilities prepared by the municipal planning board, agency or office. The comprehensive plan, being as much a process as a document capable of distribution, may at successive stages consist of data collected, preliminary plans, alternative action proposals and finally as a comprehensive plan to be adopted. In its final stages, it may consist of a series of subsidiary but interrelated plans such as, but not limited to, a water and sewerage system plan, a land use plan, a community facilities plan, a transportation plan, an urban renewal or rehabilitation plan, an air or water pollution control plan, and a park and open space plan. The comprehensive plan shall include recommendations for plan execution and implementation such as, but not limited to, a capital improvements program, renewal and rehabilitation programs, land use control ordinances, and building, safety and housing codes. The

comprehensive plan shall include mechanisms which will ensure continual data collection, reevaluation in light of new alternatives and revision. The comprehensive plan may include planning techniques such as, but not limited to, planned unit development, site plan approval, open space zoning and clustered development.

2. Public Participation. In the preparation of a comprehensive plan, the public shall be given an adequate opportunity to be heard.

Section 4961 at present is substantially the same as the quoted text. *See* 30 M.R.S.A. § 4961 (Supp.1986).

**2.** The statute governing zoning ordinances at the time the 1974 ordinance was enacted, 30 M.R.S.A. § 4962 (1978), provided in pertinent part as follows:

1. Terms. Any zoning ordinance, or provision thereof, adopted pursuant to the home rule power granted to all municipalities under the Constitution, Article VIII-A and chapter 201-A, specifically section 1917, shall be subject to the following. In the preparation of a zoning ordinance, the public shall be given an adequate opportunity to be heard.

A. Such ordinance or provision shall be pursuant to and consistent with a comprehensive plan adopted by its legislative body.

the Town's 1974 zoning ordinance must perforce be invalid.[3] Finally, he contends that the Superior Court erred in applying the enforcement statute, 30 M.R.S.A. § 4966 (Supp.1986),[4] because that statute governs only the enforcement of properly enacted local zoning ordinances. We reject Baker's argument, because it misapprehends the statutory requirements of a valid comprehensive plan.

■■■ Contrary to Baker's assertions, a comprehensive plan need not set forth in detail the parameters of municipal growth. Rather, the "comprehensive plan [is] as much a process as a document" (30 M.R.S.A. § 4961(1)) and may well increase in sophistication as the planning process continues. A comprehensive plan must articulate the municipality's zoning policy relative to such matters as population, housing, and land and water use. Although the Town's comprehensive plan is far from being a model of elaborate detail, we cannot say that the legislature expected anything more from each and every town of the state, however small. On its face the Town's comprehensive plan complies with the directions of section 4961. Because we do not disturb the finding of the Superior Court that the Town's comprehensive plan

was sufficient and valid, we must necessarily reject Baker's argument that the enforcement statute was inapplicable to him. We should not be understood, however, to accept Baker's argument as to the consequences of a comprehensive plan that is not sufficient and valid. We have no need to address that aspect of his argument.

### 3. *Amount of the fine*

■■■ The Superior Court did not abuse its discretion in setting the amount of the fine. Baker's violation of the zoning ordinance was enduring and willful. 30 M.R.S.A. § 4966(3)(E)(1), (3). By Baker's own admission he had no "home" at his business premises until 1979. Well below the maximum fine of $2,500, the $1,000 fine imposed by the Superior Court was reasonable and did not constitute error. 30 M.R.S.A. § 4966(3)(A).

### 4. *Attorney's fees*

■■■ The Superior Court assessed against Baker the full amount of the attorney fees incurred by the Town of Woolwich in the proceeding before that court. At the time (January 22, 1986) the Superior Court entered its judgment in favor of the Town,

---

**3.** The 1974 zoning ordinance, which thoroughly revised the 1968 zoning ordinance, governs this case. The events triggering this action all occurred after 1974. Baker began his auto body business on the premises in 1975. Baker established a residence on the premises in 1980. In 1983 Baker began a used car rental and sales operation on the same premises.

**4.** The statute governing enforcement of local zoning ordinances, 30 M.R.S.A. § 4966 (Supp. 1986), applies to "local zoning ordinances adopted ... in accordance with section 4962," and provides in pertinent part as follows:

3. Civil Penalties. The following provisions shall apply to violations of the laws and ordinances set forth in this section, and all monetary penalties shall be civil penalties.

A. The minimum penalty for starting construction or undertaking a land use activity without a required permit shall be $100, and the maximum penalty shall be $2,500.

....

C. The violator may be ordered to correct or abate the violations. Where the court finds that the violation was wilful [sic], the violator shall be ordered to correct or abate the violation unless the abatement or correction will:

(1) Result in a threat or hazard to public health or safety;
(2) Result in substantial environmental damage; or
(3) Result in a substantial injustice.
D. If the municipality is the prevailing party, it shall be awarded reasonable attorney fees, expert witness fees and costs, unless the court finds that special circumstances make the award of these fees and costs unjust. If the defendant is the prevailing party, he may be awarded reasonable attorney fees, expert witness fees and costs as provided by court rule.
E. In setting a penalty, the court shall consider, but shall not be limited to, the following:
(1) Prior violations by the same party;
(2) The degree of environmental damage that cannot be abated or corrected;
(3) The extent to which the violation continued following a municipal order to stop; and
(4) The extent to which the municipality contributed to the violation by providing the violator with incorrect information or by failing to take timely action.

both the municipal zoning ordinance (art. 10, § G) [5] and the applicable state statute, 30 M.R.S.A. § 4966(3)(D) (Supp.1986), *see* n. 4 above, permitted the allowance of attorney fees to the successful Town, but *only* to the extent those fees were incurred in a proceeding brought by the Town to enforce its zoning ordinance. The Superior Court committed a plain error by awarding the Town the entire amount of its fees for legal representation both in defending against Baker's 80B action, where the so-called American Rule still applied, and in prosecuting its own enforcement counterclaim, where the ordinance and the statute had carved out an exception to the American Rule. Although Baker failed to make any objection to the fee allowance on that ground, the error was obvious and affected substantial rights. *Cf. Dongo v. Banks*, 448 A.2d 885, 889 (Me.1982) (where defendant did not object at trial to court's jury instruction, issue on appeal was "whether the instruction deprived [defendant] of a fair trial and worked an injustice"); M.R. Evid. 103(d) (appellate review of obvious, though unpreserved, error). We cannot permit that part of the Superior Court's judgment to stand.

On rehearing in this court the parties have, through affidavits and supplemental briefs, presented their complete positions, factually and legally, on the issue of attorney fees in both the Superior Court and the Law Court. With that issue in this posture, we will in the interest of judicial economy set the allowable fees in both courts.

■■■ We reject Baker's argument that to assess counsel fees in the present case where he had been in violation of the zoning ordinance long before the enactment of the attorney fee provision of either the ordinance or the statute contravened the ex post facto clause of the Maine Constitution, art. I, § 11, and the United States Constitution, art. I, § 10, cl. 1. The enforcement proceeding initiated by the Town's counterclaim is civil in nature. The constitutional proscription against ex post facto laws has no application to this civil case; the "ex-

pression ['ex post facto laws'] relates solely to crimes and their punishment, and has no application to civil matters." *Watson v. State Commissioner of Banking*, 223 A.2d 834, 837 (Me.1966) (quoting *In re John M. Stanley*, 133 Me. 91, 93, 174 A. 93, 95 (1934), *aff'd, Stanley v. Public Utilities Commission*, 295 U.S. 76, 55 S.Ct. 628, 79 L.Ed. 1311 (1935)). We adhere to the well-recognized principle that "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. Richmond School Board*, 416 U.S. 696, 711, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

The Town's total legal bill of $13,060.76, divided between charges incurred in the Superior Court ($7,268.66) and in the Law Court ($5,792.10), represents an undifferentiated aggregate of its counsel's charges for defending the Town against Baker's M.R.Civ.P. 80B action as well as for pressing the Town's counterclaim for enforcement. We find that aggregate fee to be "reasonable" in amount as "the product of reasonable hours times a reasonable rate ...." *Pennsylvania v. Delaware Valley Citizens' Council*, —— U.S. ——, ——, 106 S.Ct. 3088, 3098, 92 L.Ed.2d 439, 456 (1986). However, the court is not empowered to award the Town more than that portion of its attorney's fees that it incurred in prosecuting its enforcement counterclaim.

■■ As a practical matter it is impossible to make an accurate division of the Town's aggregate legal bill between fees related to the enforcement counterclaim and fees related to the 80B action, because both involved the same issues and involved the same briefing and court appearances. *See Poussard v. Commercial Credit Plan*, 479 A.2d 881, 885 (Me.1984). In this situation it is well within this court's discretion to allocate one half of the Town's aggregate legal bill to the enforcement action side of the ledger and the remaining one half to the 80B action side. We adopt that even split as a fair and equitable resolution of a problem for which there is available no

---

5. Article 10, section G of the Town of Woolwich Planning Ordinance, which took effect on March 5, 1983, provides in pertinent part:

The Town may institute proceedings to enjoin violation of this ordinance, and if violation is found by a court, the Town may be allowed attorney fees.

better answer. *Cf. Kidder v. Coastal Construction Co., Inc.,* 342 A.2d 729 (Me.1975) (equal apportionment in worker's compensation case).

In this case we conclude that the Town is not entitled to an award against Baker of the whole of even the fees incurred in prosecuting its counterclaim. The awarding of attorney fees in a zoning enforcement action rests in the court's sound discretion, exercised in light of the facts of the particular case. The fee provision of the ordinance says "may," *see* n. 5 above, and that of the statute limits the allowance of fees to the extent "the court finds that special circumstances make the award ... unjust," *see* n. 4 above. Exercising the discretionary power thus vested in us by the ordinance and the statute, we find that because of the "special circumstances" of the instant case, the Town should be awarded only one half of its attorney fees associated with its enforcement counterclaim against Baker. The Town displayed extraordinary lethargy in enforcing its zoning ordinance; it permitted what it later claimed was an obvious violation by Baker to continue unchecked for several years, while he expanded his business and facilities. We have had presented to us in the record no evidence that Baker's business caused any lasting environmental damage. Finally, Baker by his own initiation of legal action sought out and obtained a judicial resolution of a genuine legal dispute between himself and the Town. We are not willing to characterize Baker's recourse to the trial and appellate courts as anything other than a good faith effort to get final answers to genuine legal issues that directly and crucially affected his property and business.

In conclusion, giving consideration to the "special circumstances" distinctive of this particular case and holding uppermost the goal of serving substantial justice, we award to the Town one half of the $6,530.38 fee that we allocate to the Town's enforcement counterclaim against Baker.

The entry is:

Judgment affirmed except as to the attorney fee award.

Plaintiff Philip F. Baker shall pay $3,265.19 to defendant Town of Woolwich towards its attorney fees incurred in both the Superior Court and the Law Court.

All concurring.