1997 ME 189

**Donald TOUSSAINT et al.**

v.

**TOWN OF HARPSWELL and Jane Waddle.**

Supreme Judicial Court of Maine.

Argued May 12, 1997.
Decided Aug. 12, 1997.

---

David P. Silk (orally), Curtis Thaxter Stevens Broder & Micoleau L.L.C., Portland, for plaintiffs.

John F. Barnicle (orally), Moncure & Barnicle, Brunswick, for Jane Waddle.

Geoffrey H. Hole, Bernstein, Shur, Sawyer & Nelson, Portland, for Town of Harpswell.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, and DANA, JJ.

ROBERTS, Justice.

[¶ 1] Jane Waddle appeals from the judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) on the complaint of Donald and Marietta Toussaint. The court vacated the decision of the Town of Harpswell Zoning Board of Appeals that Waddle's dog kennel is a permitted use as a home occupation.[1] Because we agree with Waddle that her dog kennel qualifies as a home occupation as defined in the Town's shoreland zoning ordinance, we vacate the judgment.

[¶ 2] In March 1995 Jane Waddle applied for a building permit to construct an addition to her home in Harpswell. On her application she described the project as "extending the mudroom and adding a garage with indoor-outdoor kennels for our dogs." The code enforcement officer, Roland Mayo, issued a building permit for the project, and construction was completed shortly thereafter. The facility, known as the Great Island Dog Kennel, is a for-profit kennel with 11 indoor-outdoor dog runs and the capacity to board 15 dogs.

[¶ 3] The neighborhood surrounding the kennel contains a mixture of year-round homes and summer cottages. The kennel is located in a Commercial Fishing II District as defined in the zoning ordinance. The ordinance permits home occupations in that district subject to the restriction that "[h]ome occupations that provide public rest-

---

1. The Town of Harpswell did not appeal from the judgment entered in the Superior Court.

rooms and showers or serve food to the public require a CEO permit." A home occupation is defined in the ordinance as follows:

> an occupation or profession which is customarily conducted on or in a residential structure or property and which is 1) compatible with the residential use of the property and surrounding residential uses; and 2) which employs no more than three (3) persons on site other than family members residing in the home. Home occupations related to commercial fishing in all cases will be acceptable uses. This also includes Bed and Breakfast as a home occupation.

[¶ 4] In the fall of 1995, the Toussaints, summer residents of the neighborhood, asked Mayo to enforce the zoning ordinance by prohibiting the continued operation of the kennel. After Mayo refused to take enforcement action, the Toussaints appealed to the zoning board of appeals. The issues presented to the board at its meeting in January 1996 were whether the operation of a dog kennel is customarily conducted on or in a residential structure or property and whether it is compatible with the residential use of the property and surrounding residential uses. At the hearing, five summer residents of the neighborhood, including the Toussaints, objected to the kennel. Each stated that the almost continuous barking by dogs at the kennel was very annoying and disruptive to their enjoyment of the neighborhood. An abutting property owner, but not a resident of the neighborhood, also objected to the kennel. Five year-round residents of the area stated their support for the kennel. They stated that the kennel was not disruptive and that the noise it generated did not add unreasonably to the noise caused by marine-related uses such as lobsterboats, bait trucks, and jet skis, or other noise already present in the area such as the barking of many neighborhood dogs and even the occasional blast from a gun. Finally, to show that dog kennels are customarily conducted on residential property, Waddle submitted a list of kennels operated on residential properties in surrounding communities.

[¶ 5] The board denied the appeal by a vote of 2 to 1. The Toussaints sought direct judicial review in the Superior Court. The court set aside the decision as an error of law and remanded to the board for appropriate enforcement action. The court found that a dog kennel is unlike businesses traditionally recognized as home occupations such as dressmaking, hairdressing, and tutoring, and that because such a facility necessarily increases levels of noise, traffic, and odor, it is not compatible with a residential neighborhood, no matter how well it is run. Waddle appeals.

[¶ 6] When, as here, the court acts as an intermediate appellate court, we independently examine the record and review the board's decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Cumberland Farms, Inc. v. Town of Scarborough,* 1997 ME 11, ¶ 3, 688 A.2d 914. Because the Toussaints challenged a decision on which they had the burden o proof, they must establish that the evidence compels a contrary result. *Herrick v. Town of Mechanic Falls,* 673 A.2d 1348, 1349 (Me.1996). "If there is relevant evidence in the record to reasonably support the Board's conclusion, the fact that the record contains inconsistent evidence or inconsistent conclusions could be drawn from the evidence does not invalidate the Board's holding." *Id.* We will not substitute our own judgment for that of the board. *Id.*

I.

[¶ 7] Waddle argues that the board determined correctly that a dog kennel is a business customarily conducted on residential property. She contends that a home occupation is more broadly defined in the Harpswell ordinance than in ordinances at issue in cases such as *Baker v. Town of Woolwich,* 517 A.2d 64 (Me.1987), and *Town of Kittery v. Hoyt,* 291 A.2d 512 (Me.1972), in which we determined that certain businesses were not home occupations within the meaning of the local zoning ordinance. She finally contends that the list of other area kennels operated on the same property as the home of the owners establishes that kennels are customarily conducted on residential property, and that the Toussaints failed to establish otherwise. We agree.

[¶ 8] We have stated repeatedly that the provisions in a zoning ordinance "should be construed reasonably with regard both to the objects sought to be obtained and to the general structure of the ordinance as a whole" *Christy's Realty Ltd. Partnership v. Town of Kittery,* 663 A.2d 59, 62 (Me.1995). Our review of the Harpswell ordinance reveals that a variety of commercial activities are permitted in the zone where the kennel is located. Those activities include home occupations, bed and breakfasts, and all marine-related commercial activities. The ordinance's definition of home occupation is relatively broad, i.e., rather than limiting home occupations to businesses customarily carried on from a home, as the ordinances at issue in *Baker* and *Hoyt,*[2] the Harpswell ordinance permits businesses that are merely customarily *conducted on residential property.* The breadth of the term, as used in the Harpswell ordinance, is further revealed by the ordinance's contemplation that home occupations may provide food service to the public, or public restrooms and showers. In light of the breadth of the ordinance and the evidence before the board that many kennels in surrounding communities are operated on residential property, the board concluded properly that a dog kennel qualifies as a business customarily conducted on residential property.

## II.

[¶ 9] Waddle next contends that the board properly found that her kennel is compatible with the residential use of her property and with surrounding residential uses. Once again, we find no error in the board's decision. Municipal officials possess a familiarity with the neighborhoods in heir community that cannot be matched by words in an appellate record. Although there was some dispute whether the operation of the kennel disturbed surrounding neighbors, the record contains relevant evidence to reasonably support the board's determination of compatibility, and we will not substitute our judgment for that of the board.

## III.

[¶ 10] The final issue that merits our attention involves an alleged conflict of interest of board member Larry Favreau, who voted in favor of Waddle at the meeting in January 1996. Favreau is married to the widow of Waddle's brother and therefore Favreau's two stepchildren are Waddle's niece and nephew. Favreau did not disclose this relationship at the board meeting. After the vote an objection was raised to his participation. In February 1996 the board held a special meeting to consider the Toussaints' request for reconsideration based on Favreau's alleged conflict of interest. The board voted unanimously to deny the Toussaints' request, finding there was no conflict that required Favreau's disqualification.

[¶ 11] The Toussaints argue that if we vacate the judgment of the Superior Court they are entitled to a new hearing because Favreau's failure to disclose the conflict of interest denied the board and the public an opportunity to question his participation. We disagree. Although it is prudent for municipal officials to disclose all possible conflicts, even when they are remote, in these circumstances the lack of disclosure does not require a new hearing.[3] The record does not

---

2. In *Baker* we concluded that an auto body repair and used car rental and sales business was not a home occupation when the zoning ordinance required such a business to be "operated from a home." *Baker v. Town of Woolwich,* 517 A.2d 64, 66 (Me.1987). In *Hoyt* we concluded that a commercial lobster storage and sale business was not a home occupation when the zoning ordinance defined such an occupation as "a business customarily conducted from the home, or readily adaptable to the home, which is an accessory use only of, or to, the dwelling concerned." *Town of Kittery v. Hoyt,* 291 A.2d 512, 514 (Me.1972).

3. 30-A M.R.S.A. § 2605 (1996) regarding conflicts of interest of municipal officials provides in pertinent part:

Certain proceedings of municipalities ... and their officials are voidable and actionable according to the following provisions.

1. **Voting.** The vote of a body is voidable when any official in an official position votes on any question in which that official has a direct or an indirect pecuniary interest.

. . . .

6. **Avoidance of appearance of conflict of interest.** Every municipal and county official shall attempt to avoid the appearance of a conflict of interest by disclosure or by abstention.

reveal that Favreau had any direct or indirect pecuniary interest in the project under review. Moreover, "[t]he decision as to whether a particular interest is sufficient to disqualify is necessarily a factual one and depends on the circumstances of the particular case." *Anderson v. Zoning Comm'n of Norwalk,* 157 Conn. 285, 253 A.2d 16 (1968). Here the board voted unanimously to deny reconsideration. On the record before us we cannot say that the decision is clearly erroneous.

The entry is:

Judgment vacated.

Remanded for the entry of a judgment affirming the decision of the Town of Harpswell Zoning Board of Appeals.

**7. Municipal officers adopt ethics policy.** In their discretion, the municipal officers may adopt an ethics policy governing the conduct of elected and appointed municipal officials.