STATE OF MAINE                           SUPERIOR COURT
YORK, SS.                                    CIVIL ACTION
                                          DOCKET NO. AP-14-028

MICHAEL BRIGGS et al.,

Plaintiffs,

v.                                                **ORDER**

TOWN OF YORK, MAINE, and
ROBERT M. GRANT,

Defendants.

## I. Background

### A. Procedural Posture

Plaintiffs Michael Briggs, Sarah Sanford, Steve Rowley, and Charles Spear, Trustee of the Spear Family Revocable Trust ("the Plaintiffs") bring this appeal under M.R. Civ. P. 80B. Plaintiffs appeal a decision of the Town of York Zoning Board of Appeals ("ZBA") that reversed the CEO's Notice of Violation issued to Robert Grant ("Grant") for operating a medical marijuana cultivation facility unlawfully in the shoreland zone. The ZBA unanimously voted to allow Grant to continue operating the facility as a lawful nonconforming use.

### B. Facts

Grant owns 17 White Birch Lane in York. The property consists of nine acres with two large steel buildings. Grant operated a lumber supply business in one building and wood manufacturing business in a second building ("Building Two"). The Town

1

issued building permits in 2012 for Building Two to be divided into nine separate units, which are currently being leased to licensed medical marijuana caregivers and used to cultivate and package medical marijuana.

On April 30, 2014, the Town of York Assistant Code Enforcement Officer (CEO) issued a Notice of Violation that asserted the marijuana cultivation constituted a different use of Building Two that was not protected as a nonconforming, "grandfathered" use. The Notice also cited several other violations of the ordinance not relevant here. Grant timely appealed the Notice of Violation to the ZBA. After several meetings on the matter, the ZBA reversed the CEO, concluding that despite transitioning from producing wood products to producing marijuana products, the use remained "manufacturing" and thus retained nonconforming use status. Petitioners here are abutters who attended and testified at meetings on the matter before the ZBA. This appeal followed.

## II. Discussion

### A. Rule 80B Standard

Pursuant to Rule 80B, the party challenging the decision of a municipal board has the burden of demonstrating an error of law, an abuse of discretion, or findings not supported in the record. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The court reviews the interpretation of municipal ordinances de novo. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245. In construing ordinances, the court first looks "to the plain meaning of its language to give effect to the legislative intent, and if the meaning . . . is clear, [does] not look beyond the words themselves." *Wister v. Town of Mount Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. "The terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be

2

obtained and the general structure of the ordinance as a whole." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 9, 828 A.2d 768 (internal quotations and citations omitted).

The court reviews the operative municipal decision directly, which the parties agree was the ZBA decision. *See Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168; York, Me., Zoning Ordinance, § 18.8.3.4 (November 4, 2014) ("Ordinance") (governing ZBA's power to review decisions of the CEO).[1]

### B. Standing

In general, to have standing to pursue an 80B appeal, "the appellant must prove (1) that it was a party at the administrative proceeding, and (2) that it suffered a particularized injury as a result of the agency's decision." *Norris Family Assocs., LLC v. Town of Phippsburg*, 2005 ME 102, ¶ 11, 879 A.2d 1007.

1. Jurisdiction and Standing in Appeals from Notices of Violation

In the Town of York, the ZBA stands as the final arbiter of decisions by Town officials and boards charged with administering the ordinances. *See* Ordinance, § 18.8.2.1. By reversing the CEO's Notice of Violation, the ZBA has effectively deemed the use of the property for medical marijuana cultivation lawful under the ordinance.

---

[1] While the ZBA decision purported to conduct appellate review, the Board heard testimony, considered exhibits, and made factual findings. This procedure appears to be consistent with Section 18.8.3.4 of the ordinances. In several recent cases, the Law Court has addressed the proper procedure for conducting appeals at the municipal level. In particular the Court has focused on whether the municipal body must conduct de novo or appellate review of another official or body's decision, and whether improper review procedure requires the court to vacate. In *Brown v. Town of Starks*, the Court affirmed the Board's decision, concluding that the challenging party failed to raise the issue of whether the Board should conduct appellate or de novo review, and therefore the issue was not preserved. 2015 ME 47, ¶ 7, __ A.2d __. In *Paradis v. Town of Peru*, the Court determined that the Board accepted new evidence and testimony while purporting to affirm the CEO in an appellate capacity, and this procedural deficiency was a second, independent ground to vacate the judgment. 2015 ME 54, ¶ 8 n.5, __ A.2d __. *Paradis* does not indicate the issue was raised at the municipal level. This court is unable to reconcile *Paradis* with *Brown*. Assuming the ZBA improperly conducted the "amalgamated" process that would be grounds to vacate the decision, because the Plaintiffs never raised the issue below, the court follows *Brown*.

3

While the York CEO is responsible for issuing Notices of Violation, Ordinance, § 9.6, the Board of Selectman initiates enforcement actions. *Id.* § 9.4. There is currently no pending enforcement action.

There is no dispute that Plaintiffs participated at the hearings below and have a sufficient injury to support ordinary standing. Defendants, however, contend that appeals from a Notice of Violation are non-justiciable and the Plaintiffs lack standing to compel the Town to pursue zoning enforcement. The rights of abutters to appeal a ZBA's reversal of a Notice of Violation decision to Superior Court under Rule 80B is not apparent under the law. Several relevant Law Court precedents must be reconciled.

In *Herrle v. Town of Waterboro*, the Court held a municipal decision not to pursue zoning enforcement was unreviewable under Rule 80B. 2001 ME 1, ¶¶ 10-12, 763 A.2d 1159. The Waterboro Board of Selectman declined to pursue enforcement because the Board deemed the property lawfully grandfathered. The Waterboro Zoning Board of Appeals ultimately affirmed the Board of Selectman's determination. In dismissing the 80B appeal, the Law Court reasoned that even if the court reversed the Board of Appeals' decision for legal error, the decision to pursue enforcement would remain within the Board of Selectman's discretion. *Id.* Construing 30-A M.R.S. § 4452(1), the court further concluded the abutters lacked standing to pursue a Rule 80B appeal to compel enforcement proceedings, even if the landowner was in violation of the ordinance. *Id.* ¶ 11. *Herrle* has since been interpreted to mean that the court will not second-guess the municipality's decision to pursue zoning enforcement. *Salisbury v. Town of Bar Harbor*, 2002 ME 13, ¶ 11, 788 A.2d 598.

4

Later cases extended *Herrle* to entirely preclude judicial review of Notice of Violation decisions where the Zoning Board of Appeals acted in merely an advisory capacity to the municipal officer or agency tasked with enforcement under the ordinances. *Farrell v. City of Auburn*, 2010 ME 88, ¶ 8, 3 A.3d 385 (judicial review under 80B not appropriate where municipal board's decision has no legal consequences for the parties because CEO retained discretion to initiate zoning enforcement action); *Shores v. Town of Eliot*, 2010 ME 129, ¶¶ 7-10, 9 A.3d 806 (concluding Notice of Violation was merely preliminary step in the enforcement process, and CEO retained discretion to refer matter to Board of Selectman to initiate enforcement proceedings, the Board of Appeals and CEO decisions were advisory in nature and not subject to judicial review).

Plaintiffs contend that in *Dubois Livestock, Inc. v. Town of Arundel*, 2014 ME 122, ¶ 9, 103 A.3d 556, the Law Court effectively abrogated *Herrle*. In *Dubois*, the Town of Arundel CEO issued a Notice of Violation, which the landowner unsuccessfully appealed to the Zoning Board of Appeals and then to the Superior Court. 2014 ME 122, ¶¶ 6-7, 103 A.3d 556. The Law Court began by noting that "recent precedents" held that "an appeal of a notice of violation would be dismissed as calling for an advisory opinion." *Id.* ¶ 8. *Dubois* did not address *Herrle* directly, but rather specifically revised the rule crafted in *Farrell* and *Shores*. *See* 2014 ME 122, ¶ 9, 103 A.3d 556 ("Some recent developments require review of [*Shores* and *Farrell*]"); *see Farrell*, 2010 ME 88, ¶¶ 15-18, 3 A.3d 385 (extending the reasoning of *Herrle* to preclude judicial review of Notices of Violation issued by the CEO and affirmed by the ZBA).

In *Dubois*, the court concluded that because the Notice of Violation affected the use and value of the property, a landowner could appeal the determination pursuant to Rule 80B. 2014 ME 122, ¶ 10, 103 A.3d 556 (citing *Sackett v. EPA*, 132 S.Ct. 1367 (2012) and *Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592 (Me. 1986)). The court emphasized that an appeal to the courts would be the landowner's only available remedy to review the lawfulness of the decision. *Id.* The court further noted that recent amendments to the statute governing municipal boards of appeals expressly allowed 80B appeals from notices of violation reviewed at the municipal level. *See* 30-A M.R.S. § 2691(4). As a result, the appeal was justiciable and properly before the court.

2. Whether Plaintiffs Can Challenge the ZBA Decision

*Farrell*, *Shores*, and *Dubois* each involved landowners who were issued Notices of Violation by a municipal zoning enforcer that were affirmed by an intermediate appellate board and appealed to Superior Court pursuant to Rule 80B. *Dubois* abandoned the rule that landowners issued a Notice of Violation by a municipal officer could not pursue a Rule 80B appeal and held the landowner was entitled to a remedy. *Dubois*, 2014 ME 122, ¶ 10, 103 A.3d 556. *Dubois* did not, however, address whether an abutter would be similarly entitled to a remedy to challenge a *reversal* of a Notice of Violation that effectively halted municipal zoning enforcement. Different interests are implicated—a landowner wishes to remove the cloud of possible zoning enforcement from the property, whereas an abutter aims to spur the municipality into enforcement.

*Herrle* specifically involved an abutter's right to appeal a Notice of Violation and rested on two separate grounds. The first ground, as described above, concerned justiciability and whether the appeals would call for an advisory opinion. This issue was

6

clarified in *Dubois* and functionally overruled that portion of *Herrle* (and by extension *Farrell* and *Shores*) to conclude that such appeals by a landowner are justiciable. *Dubois*, 2014 ME 122, ¶ 10, 103 A.3d 556. The second ground concerned an abutter's standing to initiate enforcement proceedings. *Herrle*, 2001 ME 1, ¶ 11, 763 A.2d 1159 (holding abutters "would not have standing to initiate enforcement proceedings against [landowner] even if it was determined that he was in violation of the ordinance"). There is an important distinction: in one case, a municipal official has opined that a zoning violation occurred, but the municipality has yet to commence formal enforcement proceedings, while in the other case, the Town declines to pursue enforcement because it decides there is no violation.

If this court were deciding this case on a blank slate, the Plaintiffs appear to lack standing. The ZBA has determined there is no violation of the ordinance and the Board of Selectman ultimately retains discretion to initiate enforcement proceedings. *See* Ordinance, § 9.4.[2] The law is clear that municipalities retain prosecutorial discretion to enforce their ordinances. *Adams v. Town of Brunswick*, 2010 ME 7, ¶ 10, 987 A.2d 502 ("[O]ur precedent precludes [a] court's intrusion into municipal decision-making when a municipality decides whether or not to undertake an enforcement action.") (quoting *Salisbury*, 2002 ME 13, ¶ 11, 788 A.2d 598 (internal quotation marks omitted)). To the extent *Herrle* remains good law, abutters lack standing to compel zoning enforcement where the Town has determined there is no violation. 2001 ME 1, ¶ 11, 763 A.2d 1159.

---

[2] If the Board of Selectman decides to pursue zoning enforcement, however, an appeal would properly lie under Rule 80B. *Salisbury*, 2002 ME 13, ¶ 11, 788 A.2d 598 ("If the municipality undertakes a subsequent enforcement action, that action may be subject to judicial scrutiny if review is authorized by an appropriate law and ordinance.").

Nonetheless, in light of recent cases and statutory amendments, the court is persuaded that the Law Court would extend standing to the Plaintiffs here. While *Dubois* did not address abutter rights to appeal notices of violation under Rule 80B, the court did rely on amendments to 30-A M.R.S. § 2691(4), which states:

> Absent an express provision in a charter or ordinance that certain decisions of its code enforcement officer or board of appeals are only advisory or may not be appealed, a notice of violation or an enforcement order by a code enforcement officer under a land use ordinance is reviewable on appeal by the board of appeals and in turn by the Superior Court under the Maine Rules of Civil Procedure, Rule 80B.

The Law Court has most recently construed Section 2691(4) to mean notices of violation "have been generally appealable" since the statute's effective date. *Paradis v. Town of Peru*, 2015 ME 54, ¶ 7, __ A.2d __. The express language of Section 2691(4) does not limit Rule 80B appeals to landowners facing a Notice of Violation, and could be construed to include abutters. York's ordinances provide that the ZBA has broad power to review decisions by the municipal officials, including the CEO:

> The Board of Appeals shall hear and decide Appeals from any order, requirement, decision, or determination made by any person or Board charged with the administration of this Ordinance. Additionally, the Board shall hear and decide appeals from any procedural error made by any person or Board charged with the administration of this ordinance, or by the failure of such person or Board to act.

Ordinance, § 18.8.2.1. There is no separate appeals process from Notices of Violation issued by the CEO; such an appeal falls within the general appeals jurisdiction of the ZBA above. The Ordinance furthermore does not limit Rule 80B appeals from decisions of the ZBA to landowners, but broadly includes "any party":

> Any party may take an appeal within 45 days of the vote on the [ZBA's] decision, to Superior Court from any order, relief or denial in accordance with the Maine Rules of Civil Procedure, Rule 80B. . . .

Ordinance, § 18.8.3.6.

8

The ordinance, read together with 30-A M.R.S. § 2691(4), appears to confer abutters standing to appeal a decision that reverses a notice of violation. In particular, the ordinance does not expressly state Notices of Violation issued by the CEO are unappealable. *Cf. Paradis*, 2015 ME 54, ¶ 6, __ A.2d __. Accordingly, notwithstanding the continuing vitality of *Herrle* and municipalities' prosecutorial discretion, the court assumes the Plaintiffs have standing[3] and will proceed to address the merits. *See Sahl v. Town of York*, 2000 ME 180, ¶ 8, 760 A.2d 266 ("If the appealing party is an abutter, the threshold requirements to establish standing are minimal.").

### C. Preexisting Nonconforming Uses

1. Grandfathered Uses, Generally

While the policy of zoning generally aims to "abolish nonconforming uses as speedily as justice will permit," *Two Lights Lobster Shack v. Town of Cape Elizabeth*, 1998 ME 153, ¶¶ 5-6, 712 A.2d 1061 (citations omitted), "the implementation of this goal must be carried out within legislative intendment." *Keith v. Saco River Corridor Com.*, 464 A.2d 150, 154 (Me. 1983).

The Ordinance defines a non-conforming use as follows:

Use of property, land, or a structure that is not permitted or does not conform to the use limitations of Article 4, Use Regulations, in the base zoning district in which it is located, or that is not permitted or does not conform to the use limitations of any overlay district in which it is located, but which was permitted at the time the use was established. Under no circumstances shall any non-conforming use be construed as a "permitted use."

---

[3] The court is also mindful that the courts have elsewhere entertained Rule 80B appeals by abutters where the municipality has elected not to pursue zoning enforcement. *See, e.g., Richert v. City of S. Portland*, 1999 ME 179, ¶¶ 4-5, 740 A.2d 1000; *Tousst v. Town of Harpswell*, 1997 ME 189, ¶¶ 4-5, 698 A.2d 1063. In those cases, however, the parties never raised and the courts did not address standing.

Ordinance § 2. The Ordinance allows for such uses to continue: "[a] non-conforming use which is otherwise lawful according to all applicable regulations may continue in accordance with this Article and other applicable regulations." Ordinance, § 17.1.

In 2008, the Town amended the Shoreland Zoning Ordinance, which placed the majority of Building Two's footprint within the shoreland zone. Ordinance § 3.8. Manufacturing is a prohibited use in the shoreland zone. The ZBA found Building Two had been used continuously for manufacturing prior to the 2008 amendments and was therefore manufacturing was protected as a lawful nonconforming use. The ZBA reversed the CEO's determination that in transitioning from manufacturing and warehousing to medical marijuana cultivation, the use in Building Two changed and thus lost protection as a lawful non-conforming use.

The court applies the following factors to determine whether a proposed use is a change:

> (1) whether the use reflects the "nature and purpose" of the use prevailing when the zoning legislation took effect; (2) whether there is created a use different in quality or character, as well as in degree, from the original use, or (3) whether the current use is different in kind in its effect on the neighborhood.

*Total Quality, Inc. v. Scarborough*, 588 A.2d 283, 284 (Me. 1991) (citing *Keith*, 464 A.2d at 155); *see also Turbat Creek Pres., LLC v. Town of Kennebunkport*, 2000 ME 109, ¶ 13, 753 A.2d 489.

The party claiming a proposed use is a continuation of a valid nonconforming use ordinarily has the burden of proof. *Total Quality, Inc.*, 588 A.2d at 284. Because the ZBA concluded there was no change, Grant met his burden below, and the Plaintiffs now have the burden to overturn the ZBA's decision. *Aydelott v. City of Portland*, 2010 ME 25, ¶

10

10, 990 A.2d 1024. The Plaintiffs argue that marijuana cultivation does not constitute manufacturing.[4] Plaintiffs further urge this court to construe allowable uses strictly, such that the only nonconforming use allowed is the specific use grandfathered—wood manufacturing.

## 2. The Definition of Manufacturing

The parties cite different dictionary definitions to support their competing interpretations of "manufacturing." "Manufacturing" is not defined in the ordinances. Under the ordinance, an undefined term "shall take on its common dictionary definition." Ordinance, § 2. When construing undefined ordinance terms, "the terms or expressions in an ordinance are to be construed reasonably with regard to both the objectives sought to be obtained and the general structure of the ordinance as a whole." *Priestly v. Town of Hermon*, 2003 ME 9, ¶ 7, 814 A.2d 995. Whether a proposed use falls within the terms of a zoning ordinance is a question of law. *Peregrine Developers, LLC v. Town of Orono*, 2004 ME 95, ¶ 9, 854 A.2d 216.

Plaintiffs rely on Black's Law Dictionary, which defines "manufacture" as "A thing that is made or built by a human being (or by a machine), as distinguished from something that is a product of nature; esp. any material form produced by a machine from an unshaped composition of matter." (Pl.'s Brief 13.) The Defendants quote definitions from a variety of dictionaries: "the making or producing of anything"; "the making or

---

[4] Plaintiffs also argue the Town is judicially estopped from arguing marijuana cultivation is permitted or grandfathered as a use under the ordinance. Plaintiffs point to arguments the Town made in opposition to a marijuana referendum. This argument is unpersuasive for two reasons. The referendum concerned a proposed ordinance to legalize recreational marijuana, not medical marijuana as currently authorized by state law and administered by the Department of Health and Human Services. Furthermore, the Town opposed passing an affirmative legislative enactment, not declining to enforce federal law through zoning. The Town has not taken inconsistent positions and is therefore not judicially estopped.

11

producing of something"; "to make a product suitable for use." (Def.'s Brief 10.) Plaintiffs emphasize the portion of the definition that states "as distinguished from something that is a product of nature" to argue that because marijuana is a plant, and plants are products of nature, marijuana cannot be manufactured.

Even adopting Plaintiffs' preferred definition, the act of producing usable medical marijuana involves some degree of human and mechanical manipulation. A marijuana plant is a product of nature, but according to testimony before the ZBA, growing and cultivation in Building Two involves special equipment and processes, including "grow lights," "hydroponics," and other mechanized systems. (Tr. 22, ZBA Hearing, June 25, 2014.) Medical marijuana also requires additional processing to attain the form of a final, usable product. The plant, as an "unshaped composition of matter," must be dried and packaged using machines—consistent with the Black's manufacturing definition. It is certainly consistent with the broad definitions cited by Defendants. The Ordinances do not define manufacturing or specifically regulate marijuana (although marijuana is now addressed under amendments passed in November 2014). Section 8.2.1 limits a variety of uses in the shoreland zone, none of which apply to marijuana cultivation or indicate that to treat marijuana cultivation as "manufacturing" would offend the regulatory scheme.

Thus, as a preliminary matter, cultivating and packaging medical marijuana fits within the "common dictionary definition" of "manufacture." The Board did not err as a matter of law. The next issue is whether the ZBA properly concluded that Grant's proposed use to manufacture marijuana is not a change from the previous manufacturing uses of Building Two.

> 3. The ZBA's factual determination as to whether the use constituted a change is entitled to deference.

12

Unlike the legal definitional analysis above, the ZBA's application of the "manufacturing" definition to this particular use proposal is grounded in factual findings and presents a mixed question of law and fact. *See Jordan*, 2003 ME 82, ¶ 8, 828 A.2d 768. Plaintiffs argue that any use that is not "wood manufacturing" is a change of use requiring, at a minimum, a permit to proceed lawfully under the ordinances. *See* Ordinance, § 17.1.4.1.[5]

Uses are not construed so strictly—a municipality has discretion to characterize the nature of a use and determine whether the proposed use constitutes a change. *Herrick v. Town of Mech. Falls*, 673 A.2d 1348, 1349 (Me. 1996) ("A zoning board of appeals has discretion in determining whether an activity is within the scope of a permitted, nonconforming use."). A municipal determination as to how to characterize a use "will only be overturned if it is not adequately supported by evidence in the record." *Jordan*, 2003 ME 82, ¶ 8, 828 A.2d 768. Indeed, a Board's conclusion as to whether a particular proposed use falls within a definition will be accorded "substantial deference." *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684 (affirming Board's factual finding that proposed horse barn and riding area met the definition of "animal husbandry") (citation omitted).

The ZBA found that Building Two had valid use and building permits to conduct warehousing and manufacturing since 1998. While "wood manufacturing" and general

---

[5] "An existing non-conforming use may be changed to another non-conforming use provided that the new use is equally or more appropriate to the zoning district than is the existing non-conforming use, and the impact on adjacent properties is less adverse than the impact of the former use, as determined upon review by the Planning Board, using the criteria in Section 17.1.4.3. The Code Enforcement Officer shall issue a permit to allow this change of use only when an approval is granted by the Planning Board." Ordinance, § 17.1.4.1. The ZBA concluded there was no change in use and thus a use permit from the Planning Board was not required.

13

"manufacturing" are treated separately under the Ordinances,[6] based on evidence in the record regarding historic activity, the ZBA found Building Two was grandfathered for general warehousing and manufacturing, not merely wood manufacturing. Having concluded Grant's protected nonconforming use was for general manufacturing, the ZBA properly considered whether marijuana manufacturing changed the use.

The ZBA heard abundant evidence from various witnesses over the course of three public hearings regarding the nature, quality, and degree of the marijuana cultivation and packaging operation in Building Two. The ZBA also heard testimony from neighbors and residents about the effect on the neighborhood. The ZBA concluded that Building Two remained protected as a nonconforming use to conduct "manufacturing," and the production of medical marijuana did not change the use. Anchored in fact-finding, the decision is entitled to deference and must stand unless unsupported by record evidence. *Rudolph*, 2010 ME 106, ¶ 11, 8 A.3d 684; *Herrick v. Town of Mech. Falls*, 673 A.2d 1348, 1349-50 (Me. 1996) (noting even where the "record contains inconsistent evidence or inconsistent conclusions could be drawn from the evidence does not invalidate the Board's holding"). Building Two is not slated to dispense medical marijuana or conduct on-site sales, but has and will continue to manufacture a product, like the prior manufacturing activity, to be distributed elsewhere for use or sale. Record evidence supports the ZBA's conclusion that marijuana manufacturing was not a change from the protected nonconforming use. *Cf. Total Quality, Inc.*, 588 A.2d at 283-84 (evidence supported Board's conclusion that proposed

---

[6] *See* Ordinance § 8.2.C (expressly and separately prohibiting wood manufacturing and manufacturing in the shoreland zone).

14

conversion from wholesale clam product manufacturing facility into retail ice cream business was a change in nonconforming use).

Plaintiffs contend that by leasing to a number of tenants who separately cultivate medical marijuana, Grant has unlawfully intensified the nonconformity. But "where the original nature and purpose of the enterprise remain the same, and the nonconforming use is not changed in character, mere increase in the amount or intensity of the nonconforming use within the same area does not constitute an improper expansion or enlargement of such nonconforming use." *Frost v. Lucey*, 231 A.2d 441, 448 (Me. 1967). The purpose of the use has remained the same: to manufacture a product. The amount or intensity of manufacturing conducted within the structure does not render the use unlawful. In any event, the ZBA heard evidence that sound and traffic from the prior industrial-scale wood manufacturing business was more intense in character and quality and impactful upon the neighborhood. Furthermore, Grant obtained all necessary building permits to divide Building Two into separate units for the purpose of leasing to licensed marijuana caretakers, to which the Plaintiffs did not object.[7]

## III. Conclusion

The ZBA decision reversing the CEO on the grounds Grant has a legal nonconforming use to manufacture marijuana in the shoreland zone is supported by recorded evidence and must be affirmed.

The entry shall be:

---

[7] In a section of the brief not joined by the Town, Grant argues that the Plaintiffs are attempting an untimely appeal of prior permits. *Juliano v. Town of Poland*, 1999 ME 42, ¶ 7, 725 A.2d 545. Having concluded that the ZBA did not err, Grant prevails and thus the court need not reach this issue.

15

Petitioner's Rule 80B appeal is hereby DENIED. The ZBA's decision is AFFIRMED.

SO ORDERED.

DATE: May _15_, 2015

John O'Neil, Jr.
Justice, Superior Court

AP-14-028

ATTORNEYS FOR PLAINTIFF:
PAUL F DRISCOLL
JOSHUA D HADIARIS
NORMAN HANSON & DETROY LLC
P O BOX 4600
PORTLAND ME 04112


ATTORNEY FOR DEFENDANT: TOWN OF YORK
MARY E COSTIGAN
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME 04101

ATTORNEY FOR DEFENDANT ROBERT M GRANT:
DURWARD PARKINSON
BERGEN & PARKINSON LLC
62 PORTLAND RD SUITE 25
KENNEBUNK ME 04043